McKISSACK v COMPREHENSIVE HEALTH SERVICES
OF DETROIT

Docket No. 96458. Argued May 5, 1994 (Calendar No. 3). Decided
August 30, 1994. Rehearing denied *post,* 1202.

Clara McKissack sought worker's compensation for injuries sustained in the course of her employment as a medical technologist with Comprehensive Health Services of Detroit. A hearing referee found that she sustained a work-related disability, but concluded that it was not a continuing disability because she was able to return to her job. The Worker's Compensation Appeal Board reversed, holding that she had a continuing disability because she was not able to perform her duties adequately, and that this had led her employer to become dissatisfied and demand her resignation. The Court of Appeals, MURPHY, P.J., and GRIBBS and FITZGERALD, JJ., reversed in an unpublished opinion per curiam (Docket No. 141512). The claimant appeals, limited to the question whether there was sufficient evidence to support the WCAB's finding of continuing disability.

In an opinion by Justice LEVIN, joined by Chief Justice CAVANAGH, and Justices BOYLE and MALLETT, the Supreme Court *held:*

There was sufficient evidence to support the WCAB's finding that the claimant was suffering from a continuing disability.

1. There was evidence that the speed with which plaintiff could carry out her job duties was below the minimum acceptable by Comprehensive Health Services, contravening the statement of the Court of Appeals that the record was wholly void of such evidence. Further, evidence that the work was painful was properly considered by the WCAB in determining that the plaintiff was disabled from performing it. Clearly there is a difference between pain resulting from illness or disease not caused or aggravated by the work or working conditions, and pain resulting from a work-related injury. Worker's compensation benefits may not be awarded simply because a worker is unable by reason of pain to continue with the work if the cause of the pain is illness or disease not caused or aggravated by the work or working conditions, but if the WCAB finds that pain is caused or aggravated by a work-related injury, and the worker

cannot by reason of pain resulting from the injury continue to work, the worker can be found to be disabled and awarded benefits.

2. The Court of Appeals exceeded its authority in finding as fact that the plaintiff was not fired because of inability to keep pace with the demands of her employer. It is one thing for the Court of Appeals to find that there is insufficient evidence to support a finding of fact made by the WCAB; the Court exceeds its authority when it makes its own findings of fact. The WCAB found that Comprehensive Health Services had not shown to the satisfaction of the WCAB that the plaintiff was asked to resign for a reason other than her inability to keep up with the work, an inability that the WCAB found to have been caused by her work-related injury.

3. Although MCL 418.301(5)(a); MSA 17.237(301)(5)(a) provides that an employee is to be deemed voluntarily removed from the work force and no longer entitled to any wage-loss benefits during a period of a refusal of a bona fide offer of reasonable employment, that stricture is not applicable unless the employee refuses the employment without good and reasonable cause. Clearly an employee, such as the plaintiff, may be found by the WCAB to have good and reasonable cause to refuse even a bona fide offer of reasonable employment where the employee has refused the employment or refused, by resigning, to continue in the employment because she was disabled from doing the work demanded by the employer.

4. The WCAB found by a preponderance of the evidence that the work-related disability to the claimant's left elbow precluded her from performing her medical technologist job as the job existed before her injury, establishing that she was disabled within the meaning of the worker's compensation act, which, at the time, defined "disability" as a limitation of an employee's wage-earning capacity in the employee's general field of employment resulting from a personal injury or work-related disease.

Reversed and remanded.

Justice RILEY, joined by Justice GRIFFIN, dissenting, stated that proper resolution of this case requires an answer to the question whether it was the alleged disability or the mistakes in blood testing that led to the defendant's decision to terminate the plaintiff. To date, causation questions ordinarily resolved by the worker's disability compensation system have involved the issue whether employment causes or aggravates an injury or disease that qualifies for compensation. In this case, whether plaintiff's injury made her disabled under the

terms of the Worker's Disability Compensation Act is not appropriately reached unless it is clear that her injury-related work performance rather than her alleged mistakes caused the termination. Thus, proper resolution of this case would be to remand to the WCAC to determine whether it has jurisdiction to decide whether the plaintiff was terminated for poor performance unrelated to her injuries, or for work slowdown as a consequence of them, and, if so, whether there are facts on record to permit the WCAC to reverse what is in reality a credibility determination made by the hearing referee.

Justice BRICKLEY, dissenting, stated that the issue is whether, as a matter of law, the plaintiff's evidence that she could not perform her work to her former employer's satisfaction is sufficient under the standard required by MCL 418.301(4); MSA 17.237(301)(4). The defining standard regarding whether a worker is disabled is broader than work history with one employer. The statute requires an impairment in the employee's general field of employment rather than employability with one specific employer. Absent any evidence regarding the plaintiff's general employability as a medical technologist, the evidence presented, as a matter of law, did not meet the plaintiff's burden of proof. Even if the plaintiff has proven a work-related disability, the case should be remanded for a redetermination of whether the injury is partial or total.

*Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C.* (by *Granner S. Ries*), for the plaintiff.

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), for the defendants.

Amici Curiae:

*Glotta, Rawlings & Skutt, P.C.* (by *Richard M. Skutt*), and *Monica Farris Linkner* and *Jeffrey T. Meyers,* for Michigan Trial Lawyers Association.

*Lacey & Jones* (by *Gerald M. Marcinkoski*) for Chrysler Corporation and Michigan Mutual Insurance Company.

LEVIN, J. This is a worker's compensation case. The hearing referee found that plaintiff Clara

McKissack sustained a work-related disability to her left elbow, but concluded that it was not a continuing disability because she was able to return to her job as a medical technologist with defendant Comprehensive Health Services of Detroit. The Worker's Compensation Appeal Board reversed, holding that McKissack had a continuing disability because she was not able to perform her duties adequately, and that this had led her employer to become dissatisfied and to demand her resignation.

The Court of Appeals reversed.[1] This Court granted leave to appeal limited to the question whether there was sufficient evidence to support the WCAB's finding that McKissack was suffering from a continuing disability.[2] We reverse because we find that there was sufficient evidence.

[1] Unpublished opinion per curiam, issued December 29, 1992 (Docket No. 141512).

[2] This Court denied the motion of Comprehensive Health Services to add the issues adverted to in the following paragraph of Comprehensive Health Services' motion:

> A decision by the court on the issue about continuing disability that was described in the order granting leave is the gateway to other issues that include (i) the specific extent of any continuing disability to determine the amount of weekly worker's disability compensation for the employee, *Trask v Modern Pattern & Machine Co*, 222 Mich 692; 193 NW 830 (1923), compare, *Sobotka v Chrysler Corp [(On Rehearing)*, 198 Mich App 455; 499 NW2d 777 (1993)]; (ii) whether any entitlement to weekly workers' disability compensation benefits for the employee is suspended by the operation of MCL 418.301(5)(a);' MSA 17.237(301)(5)(a) and (iii) whether any claim for weekly worker's disability compensation for the employee may be considered by operation of collateral estoppel, *Paschke v Retool Industries* (Docket No. 96276).

McKissack responded to the motion that she had been found totally disabled by the WCAB and that *Sobotka* "by its terms is limited to a partially disabled employee," and that § 301(5) is not involved because McKissack did not refuse an offer of employment. *Paschke v Retool Industries*, 445 Mich 502; 519 NW2d 441 (1994), and *Sobotka v Chrysler Corp (After Remand)*, 447 Mich 1; 523 NW2d 454 (1994), was recently decided by this Court.

I

McKissack, a fifty-four-year old senior medical technologist, commenced employment with Comprehensive Health Services in 1977. She fell while walking across an employee parking lot on June 20, 1983. She sustained a fracture of the right knee and left elbow, and was hospitalized initially for two weeks, and returned for an additional week in September. After casts were removed from her right knee and left elbow, she was placed on a regimen of physical therapy.

McKissack's attending physician acquiesced in her request to return to work, but imposed restrictions against prolonged standing or walking, strenuous use of the left arm, repetitive bending, and heavy lifting. She returned to her full duties as a medical technologist on January 18, 1984. She walked with a marked limp. She often resorted to the use of a cane to assist her in ambulation. She had a limitation of motion in her left arm, her elbow being frozen at the fracture site. She testified that she moved slowly in performing her duties because of right leg, left shoulder, and left arm pain, and that she could not move her arm upward more than forty degrees.

A

The hearing referee found that McKissack resigned on November 26, 1984, after she was asked to do so because she had failed to carry through to conclusion certain ANA tests, and, as a result, two patients were placed in intensive care, exposing Comprehensive Health Services to possible litigation.

The hearing referee concluded, on the basis of the testimony of physicians who examined

McKissack for Comprehensive Health Services, that McKissack was able to perform her normal occupational duties on her last day of work, November 26, 1984, and that she did not leave work because of her injuries of June 20, 1983, "but as a result of an unfortunate series of incidents in which she neglected to follow through on ANA testing procedures which she, herself, had been instrumental in establishing." McKissack had thus failed to sustain the burden of proving disability beyond January 18, 1984.

**B**

The WCAB reversed, stating that, on the basis of the testimony of the treating and examining physicians, the testimony of McKissack, and of lay witnesses, McKissack was "unable to continue to perform her job as a medical technologist due to the physical residuals of the injury . . . ." The WCAB found as facts that McKissack's "arm limitations affected her ability to perform her job, to the extent that the job was painful," that "her performance was slower than prior to the injury," that her supervisor asked her "to work more quickly," and that the mistake[3] was due to the "speed up" required by McKissack's "supervisor when she was unable to work quickly."[4]

---

[3] Referring apparently to the ANA tests.

[4] The WCAB said:

> It is uncontested and it is found as fact that the range of motion of plaintiff's left elbow is limited at approximately 40 degrees from extension, although plaintiff retains range of motion on supination and pronation. Plaintiff's job requires extensive use of the hands in mixing substances, reaching into supply cabinets, handling specimen, and using machines such as a centrifuge. We find credible the testimony of treating physician Dr. Wyche, that pain is associated with extreme movements of the elbow. Plaintiff testified she soaked her arm

The WCAB added that McKissack "was not able
to perform the work" at Comprehensive Health
Services, and that, even if she were able to per-
form the work, Comprehensive Health Services
"has not shown a violation of company rules which
would normally result in termination of a non-
disabled employee." The WCAB explained that
McKissack's direct supervisor "did not feel the test
performance was grounds for termination; and in
fact blamed herself for part of the problem."

C

The Court of Appeals reversed the decision of
the WCAB. It acknowledged that it "is bound by
findings of fact made by the [WCAB], which are
conclusive in the absence of fraud. Const 1963, art
6, § 28" and that its "authority is to review only
questions of law . . . ."

The Court of Appeals said that there was compe-
tent evidence to support the WCAB's determination
that McKissack "could perform her duties as a
medical technologist more slowly after injury than

in the morning to achieve mobility. She testified, and Ms.
Jordan verified, some of the tests were difficult and awkward
for her to perform.

We find as fact that plaintiff's arm limitations affected her
ability to perform her job, to the extent that the job was
painful, and that her performance was slower than prior to the
injury. We find as fact plaintiff was told by her supervisor to
work more quickly. We find as fact that the mistake made by
plaintiff was due to the "speed up" forced upon her by her
supervisor when she was unable to work quickly. We find as
fact plaintiff's arm condition cannot be expected to heal any
further.

Applying our findings to the law, we find plaintiff has proven
by a preponderance of the evidence that the work related
disability to the left elbow precludes her from performing her
medical technologist job as the job existed prior to injury. We
find plaintiff disabled pursuant to *Kidd* [*v General Motors Corp*,
414 Mich 578; 327 NW2d 265 (1982)], and *Kaarto* [*v Calumet &
Hecla, Inc*, 367 Mich 128; 116 NW2d 225 (1962)].

before, and only with pain." It said that that
finding failed to establish, however, that Mc-
Kissack is " 'disabled' as statutorily defined. After
injury, plaintiff returned to her regular employ-
ment and suffered no diminution of remuneration.
The record is wholly void of evidence that, after
injury, the speed with which plaintiff could carry
out her job duties was below the minimum accept-
able for a medical technologist employed by" Com-
prehensive Health Services.

The Court of Appeals said that while McKissack
"could only work with pain," she "could perform
and was performing her duties when she resigned
from her employment. Merely because her work
was painful does not establish that she could not
perform it or that she was disabled from perform-
ing it. *Kostamo v Marquette Iron Mining Co,* 405
Mich 105, 116 [274 NW2d 411] (1979)."

The Court of Appeals in effect found that
McKissack had not "been fired because of inability to
keep pace with the demands of her employer
. . . ."[5] It said, assuming that McKissack "estab-
lished a disability," she was nevertheless precluded
from receiving benefits because "she had not yet
been fired, she was working under a 'bona fide offer
of reasonable employment from the previous
employer' " within the meaning of § 301(5)(a)[6]
of the Worker's Disability Compensation Act:

---

[5] The Court of Appeals said:

Had plaintiff been fired because of inability to keep pace with
the demands of her employer, a different situation would be
presented.

[6] If disability is established pursuant to subsection (4), entitle-
ment to weekly wage loss benefits shall be determined pursuant
to this section and as follows:

(a) If an employee receives a bona fide offer of reasonable
employment from previous employer, another employer, or
through the Michigan employment security commission and

"Whatever the motivation for plaintiff's resignation, whether it was under pressure or not, even assuming she was disabled, she nonetheless resigned."

## II

The Court of Appeals erred in stating

—that there was no evidence that "the speed with which plaintiff could carry out her job duties was below the minimum acceptable" by Comprehensive Health Services;

—that evidence the work was painful does not establish that McKissack "was disabled from performing it";

—that McKissack was not "fired because of inability to keep pace with the demands of her employer"; and

—assuming that McKissack "had established a disability," § 301(5)(a) precludes her from receiving benefits because she had not been fired but rather, "[w]hatever the motivation for plaintiff's resignation, whether it was under pressure or not, even assuming she was disabled," she had resigned from a " 'bona fide offer of reasonable employment from the previous employer.' "

## A

There was evidence that "the speed with which

the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal. [MCL 418.301(5); MSA 17.237(301)(5), added by 1981 PA 200.]

plaintiff could carry out her job duties was below the minimum acceptable" by Comprehensive Health Services.

McKissack testified that she "didn't have the speed that [she] had before" her injury. She "was coping with pain," and "couldn't handle the load that [she] previously could handle." Her supervisor complained about the speed of her work. "[She] was constantly told [by her supervisor] that [she was] not holding up [her] end. The employees work[ed] extra to save [her] job for [her], and [she was] not holding up [her] end. This was constantly brought to [her] attention" by her supervisor. A co-worker testified that on a number of occasions she overheard the supervisor so remonstrating with McKissack about her failure to hold up her end of the work.

McKissack's testimony and the testimony of her co-worker contravene the statement by the Court of Appeals that the "record is wholly void of evidence" that the speed with which McKissack could carry out her duties was below the minimum acceptable by Comprehensive Health Services.

B

Evidence that the work was painful was properly considered by the WCAB in determining that McKissack "was disabled from performing it."

The Court of Appeals said, citing this Court's decision in *Kostamo v Marquette Iron Mining Co,* *supra* at 116, that "[m]erely because her work was painful does not establish that she could not perform it or that she was disabled from performing it." In *Kostamo,* this Court said that the worker's compensation act "does not provide compensation for a person afflicted by an illness or disease not caused or aggravated by his work or working

conditions. Nor is a different result required because debility has progressed to the point where the worker cannot work without pain or injury." *Id.*

Clearly there is a difference between pain resulting from "illness or disease *not caused or aggravated*" by the work or working conditions, and pain *resulting* from a work-related injury. As indicated in *Kostamo,* worker's compensation benefits may not be awarded simply because a worker is unable by reason of pain to continue with the work if the cause of the pain is illness or disease not caused or aggravated by the work or working conditions. But contrariwise, if the WCAB finds that pain is caused or aggravated by a work-related injury, and the worker cannot by reason of pain resulting from the injury continue to work, the WCAB can find that the worker is disabled and award benefits.

C

The Court of Appeals exceeded its authority in finding in effect as a fact that McKissack was not "fired because of inability to keep pace with the demands of her employer . . . ."

It is one thing for the Court of Appeals to find that there is insufficient evidence to support a finding of fact made by the WCAB; the Court of Appeals exceeds its authority when it makes its own findings of fact. *Thomas v Griffin Wheel Co,* 8 Mich App 35, 45; 153 NW2d 387 (1967).

Moreover, the WCAB found that Comprehensive Health Services had "not shown a violation of company rules which would normally result in termination of a non-disabled employee." The WCAB thus found that Comprehensive Health Services had not shown to the satisfaction of the

WCAB that McKissack was asked to resign for a reason other than her inability to keep up with the work, an inability that the WCAB found to have been caused by her work-related injury.

### D

Although § 301(5)(a) provides that an employee shall be deemed voluntarily removed from the work force and no longer entitled to any wage-loss benefits during a period of a refusal of a bona fide offer of reasonable employment from a previous employer, such as Comprehensive Health Services, or, indeed, another employer, or through the Michigan Employment Security Commission, that stricture is not, by the terms of § 301(5)(a), applicable unless the "employee refuses that employment without good and reasonable cause."[7]

Clearly an employee, such as McKissack, may be found by the WCAB to have "good and reasonable cause" to refuse even a "bona fide offer of reasonable employment" on a finding that the employee refused the employment or refused, by resigning, to continue in the employment because she was disabled from doing the work demanded by the employer.[8] Such a finding by the WCAB is implicit in its other findings. See *Thomas v Griffin Wheel Co, supra.*

The WCAB found that McKissack was disabled

---

[7] See n 6 for text of § 301(5)(a).

[8] Section 301 defines "reasonable employment":

"Reasonable employment," as used in this section, means work that is *within the employee's capacity to perform* that poses no clear and proximate threat to that employee's health and safety, and that is within a reasonable distance from that employee's residence. The employee's capacity to perform shall not be limited to jobs in his or her general field of employment. [MCL 418.301(9); MSA 17.237(301)(9). Emphasis added.]

from doing the work demanded by Comprehensive Health Services; it said: "we find plaintiff has proven by a preponderance of the evidence that the work related disability to the left elbow precludes her from performing her medical technologist job as the job existed prior to injury." That finding is supported by the wcab's findings of fact that McKissack's "arm limitations affected her ability to perform her job, to the extent that the job was painful," that "her performance was slower than prior to the injury," that she "was told by her supervisor to work more quickly," and that the "mistake" made by her was due to the "speed up" required by her supervisor when she was unable to work quickly.

The wcab's finding that McKissack was disabled from doing the work demanded by Comprehensive Health Services established that she was disabled within the meaning of the worker's compensation act, which, at the time, defined "disability" as "a limitation of an employee's wage earning capacity in the employee's general field of employment resulting from a personal injury or work related disease."[9] As set forth at the outset of this opinion, we conclude that there was sufficient evidence to support the wcab's finding that McKissack was suffering from a continuing disability.

III

The wcab found that McKissack was totally disabled from January 19, 1984, the day after she returned to Comprehensive Health Services and resumed her full duties as a medical technologist. Comprehensive Health Services declares in its

[9] 1981 PA 200, MCL 418.301(4); MSA 17.237(301)(4).
1987 PA 28, substituted "work suitable to his or her qualifications and training" for "employee's general field of employment."

brief in this Court that this is mind boggling: "It is an oxymoron to declare at once and the same time that an injured employee is *totally* disabled from a field of endeavor upon resuming work in that field!" (Emphasis in original.)[10]

Comprehensive Health Services contends that if McKissack was disabled at all, she was partially, not totally, disabled, and that the WCAB should in all events be required to determine a residual wage-earning capacity for McKissack as a partially disabled person pursuant to this Court's decision in *Trask v Modern Pattern & Machine Co*, 222 Mich 692; 193 NW 830 (1923), and the decision of the Court of Appeals in *Sobotka v Chrysler Corp (On Rehearing)*, 198 Mich App 455; 499 NW2d 777 (1993).

In *Sobotka v Chrysler Corp (After Remand)*, 447 Mich 1; 523 NW2d 454 (1994), we reversed the decision of the Court of Appeals. The lead and concurring opinions held that *Trask* and any progeny have been superseded by subsequent legislation insofar as they allowed consideration of general changes in economic conditions as a factor "to be used to determine the proportionate extent of an impairment of earning capacity," *id.*, p 29.

---

[10] Comprehensive Health Services continues with its argument:

Moreover, it is an agreed fact that the Employee did the work of a certified medical technologist just as any other person working right alongside her. There was no alteration, no accommodation and no assistance provided to the Employee that was not provided to anyone performing the work.

\* \* \*

In short, it is difficult to apprehend how the Employee was *totally* disabled and *entirely* unable to work and earn a living in her field as a certified medical technologist after she actually had resumed the job, without alteration, accommodation or assistance different from any other such worker and had no complaint and always represented the ability to work. [Emphasis in original.]

*Sobotka* holds that an employer is not entitled to a determination of a residual wage-earning capacity and that the absence of wages and evidence of a work-related injury permits an award of maximum benefits. The factfinder is free to accept or reject evidence of actual wages earned, avoided, or refused, or other factors affecting an employee's actual as opposed to theoretical, employability.

In the instant case, the WCAB concluded that McKissack was totally disabled from doing the work demanded by Comprehensive Health Services from and after the date of her resignation. No wage-earning capacity was established by evidence of actual wages earned, avoided, or refused after that date. In addition, no evidence was accepted by the WCAB questioning the extent of McKissack's injury or other factors affecting her employability.

By reason of this Court's decision in *Sobotka,* there is no need to remand to the Court of Appeals to consider other issues not addressed by the Court of Appeals.

Reversed and remanded to the Worker's Compensation Appellate Commission for implementation of the award of benefits.

CAVANAGH, C.J., and BOYLE and MALLETT, JJ., concurred with LEVIN, J.

RILEY, J. I respectfully dissent. While I realize that this Court's grant of leave to appeal was limited to the question whether there was sufficient evidence on record to support the Worker's Compensation Appeal Board's finding of continuing disability, I am persuaded that the failure to squarely address another question is the reason why this case is before us. Simply stated, the question is whether the Worker's Compensation Appellate Commission (formerly, the WCAB) has

the authority to decide issues surrounding the reasons for termination that are not necessarily related to an injury-related disability. Plaintiff asserts the right to worker's disability benefits as a result of her injury and alleged inability to adequately perform up to defendant's standards as a consequence of the injury. Defendant claims that plaintiff was performing adequately for its purposes and that the decision to terminate resulted from some mistakes plaintiff made in defendant's blood-testing process that, in at least one case, led to serious consequences that threatened to put defendant into a litigious situation.

Testimonial evidence of plaintiff and a co-worker lends support to plaintiff's claim that her employment was terminated for her inability to keep up with her duties with defendant. Documentary evidence, which includes favorable work reports generated by plaintiff's supervisor, supports defendant's position that plaintiff was performing adequately for most purposes. In turn, this supports the notion that plaintiff's employment was terminated as a result of mistakes made in the blood-testing process rather than for any inability to perform her duties. Thus, the question should be which of these positions is the real reason behind plaintiff's termination.[1] Stated another way, proper resolution of this case requires an answer to the question whether it was the alleged disability or the mistakes in the blood-testing process that led to defendant's decision to terminate plaintiff.

---

[1] This Court's grant of leave encompasses only the question whether there is any evidence on record supporting the WCAB's decision in this case. While this properly respects the deferential standard of review that decisions of the WCAC enjoy under MCL 418.861; MSA 17.237(861) and Const 1963, art 6, § 28, it limits the focus of this Court's inquiry to plaintiff's version of the facts. As noted earlier, the importance of plaintiff's alleged disability to defendant's decision to terminate is a disputed issue.

I

As the majority notes, the hearing referee concluded that plaintiff resigned under threat of termination for the mistakes she made in the course of testing blood samples. To reach this conclusion, the referee considered plaintiff's injuries and possible work restrictions. Presumably, the purpose of this inquiry was to provide the referee with enough background to determine whether the reason for termination was plaintiff's inability to perform her duties up to the appropriate standard *or* the errors plaintiff allegedly made in the blood-sampling process.

The WCAB reversed the hearing referee's decision premised on its belief that the reason for termination had nothing to do with the flawed blood testing because defendant " 'has not shown a violation of company rules which would normally result in termination of a non-disabled employee.' "[2] See majority, *ante*, p 63. The WCAB, however, did opine that plaintiff was a victim of a "tactic of forc[ed] resignation" and that it suspected "that plaintiff was fired because of her disability." WCAB slip op, p 7. However, the WCAB did not make a specific finding on what I consider to be the pivotal issue because it was "not asked to nor able to do so." *Id.*

Recognizing that the WCAB's finding of plaintiff's injury-related limitations was binding on it, the Court of Appeals nonetheless ruled that the facts failed to establish disability as defined by MCL 418.301; MSA 17.237(301). The justification for the Court's ability to so conclude was the "so-called

[2] Company termination policies and justifications for termination of employment at will are the subject of employment law rather than the traditional laws of worker's disability. This inherent distinction goes to the root of the difficulties involved in this case.

'jural relationships' " as described in *Deziel v Difco
Laboratories, Inc*, 394 Mich 466; 232 NW2d 146
(1975).[3] Taking the "ordinary facts"[4] of the wcab
as binding, the Court emphasized the lack of proof
on the question whether plaintiff's slowed pace
was unacceptable to defendant.[5] Moreover, the
Court noted that a different situation would have
been presented "[h]ad plaintiff been fired because
of inability to keep pace with the demands of her
employer . . . ."[6] Finally, the Court concluded
that § 301(5) controlled the inquiry and that
plaintiff's resignation constituted an unreasonable
refusal to perform reasonable employment under
an employer's bona fide offer.[7]

---

[3] In *Deziel*, a majority of this Court stated:

In the first place we consider it in order to discuss a claim
that is asserted in each of these cases, *viz.*, that the ruling by
the Appeal Board is a finding of fact which is made binding
upon us if supported by any evidence by Const 1963, art 6, § 28.

What is always at issue in these cases is a "jural relation"—a
right to compensation in the claimant, and a liability for it in
the defendant. As pointed out in 1 Wigmore on Evidence (3rd
ed), § 1, p 2, "[t]he material on which this claim of the plaintiff
rests, if successful, is composite."

This means simply that in determining any jural relation-
ship, the facts upon which such relationship is to be predicated
are "ordinary facts" and the jural relationship itself (which in
a very real sense is also a fact) is deemed a "holding," "ruling,"
or "conclusion" of law.

It is to the former, the facts upon which the jural relation-
ship is based—"ordinary facts"—that the constitution addresses
itself, and not the latter—which are called legal principles. See,
generally, Wigmore, *supra*, "(a) *Law and Fact, distinguished.*"
[*Id.* at 474-475.]

[4] See n 3.

[5] Unpublished opinion per curiam, issued December 29, 1992
(Docket No. 141512).

[6] *Id.*

[7] At the time of plaintiff's termination, MCL 418.301(5); MSA
17.237(301)(5) provided:

If disability is established pursuant to subsection (4), entitle-
ment to weekly wage loss benefits shall be determined pursuant
to this section and as follows:

II

Of the three legal authorities to rule on the merits of this case to date, only the hearing referee decided between plaintiff's and defendant's theories regarding the reason for plaintiff's termination. The WCAB purportedly declined to address the issue by stating that it was neither asked nor able to consider the question. The Court of Appeals relied on the "jural relation" to reach its conclusion that plaintiff was not disabled under the WDCA on the basis that plaintiff resigned from a bona fide offer of reasonable employment that she was physically able to perform up to defendant's requirements, albeit with some pain. In my opinion, the failure of the WCAB and the Court of Appeals to squarely address the hearing referee's conclusion regarding causation has led to complications necessitating this appeal.

To be sure, there is little if any precedent on the issue whether anything in the WDCA supports the WCAC's authority to decide between two different theories of causation with one clearly being within its jurisdiction (compensable work-related disability) and the other commonly addressed under another body of law, i.e., employment law. To date, causation questions ordinarily resolved by the worker's disability compensation system have involved the issue whether employment causes or aggravates an injury or disease that qualifies for compensation. In this case, however, the question

(a) If an employee receives a bona fide offer of reasonable employment from previous employer, another employer, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal.

whether plaintiff's injury made her disabled under the terms of the act is not appropriately reached unless it is clear that her injury-related work performance rather than her alleged mistakes caused the termination.[8] Resolution of this case is made difficult by the existence of facts to support both theories.[9]

### III

In my opinion, the proper resolution of this case is to remand to the WCAC to determine whether it has jurisdiction to decide the issue whether plaintiff was terminated for poor performance unrelated to her injuries or work slowdown as a consequence thereof and, if so, whether there are facts on

---

[8] It is also conceivable that the injury could be the cause of the mistakes that led to termination. Indeed, the WCAB decided as a matter of fact "that the mistake made by plaintiff was due to the 'speed up' forced upon her by her supervisor when she was unable to work quickly." By treating this aspect of the case as a disability, the WCAB attempted to neutralize the hearing referee's conclusion regarding the causation issue. Thus, the WCAB manipulated the primary issue that it purportedly neither was asked nor was able to address. Further evidence of this manipulation is the statement of the WCAB regarding the fact that defendant failed to demonstrate a company rule on blood-sample testing, the violation of which would support termination of plaintiff's employment at will. See WCAB slip op, pp 3-4. By disposing of defendant's theory in this manner, the WCAB avoided the conflict between the two theories of causation.

[9] Our courts have already recognized certain occurrences that terminate the link between work-related, compensable disability and wage loss. For example, a heart attack unrelated to conditions of employment has been held to terminate an established causal connection between a work-related injury and wage loss. See *MacDonald v State Farm Mutual Ins Co,* 419 Mich 146; 350 NW2d 233 (1984). In *Luberda v Farm Bureau General Ins Co,* 163 Mich App 457; 415 NW2d 245 (1987), the Court of Appeals concluded that incarceration of a person receiving disability benefits terminated the connection between compensable injury and wage loss for the period of incarceration.

In the same vein, termination of employment for a valid business reason should also sever the connection between a work-related disability and, therefore, any entitlement to worker's disability benefits. Similarly, an employee should not be awarded disability benefits where termination and its ensuing wage loss are causally linked to a valid reason for termination rather than a work-related injury.

record to permit it to reverse what is in reality a credibility determination made by the hearing referee. This issue has not been briefed or argued. Still, I am convinced not only that it has led to this appeal, but also that a resolution on any other ground would do a disservice to this state's jurisprudence. Moreover, the WCAB has implicitly exercised its jurisdiction in this regard by awarding benefits under worker's compensation law while disregarding defendant's claim of a right to terminate employment for a nondisability reason. In effect, the WCAB has asserted a right to disregard noninjury reasons for termination where causation is at issue. If the WCAC is allowed to follow this course in subsequent cases, it would represent a procedural but not a legal solution to the issue and would rob an employer of a valid defense to a worker's compensation claim in cases where there is evidence of work-related injury as well as of reasons to lawfully terminate employment. It would also provide employees with an option between pursuing a disability claim or a wrongful discharge claim under mixed facts of possible disability and possible justified termination. I have been unable to find anything in the WDCA that directs the WCAC to automatically award benefits where causation for the wage loss is in dispute.

Accordingly, I would either affirm the Court of Appeals decision for its implicit ruling that plaintiff's termination was due to mistakes in the blood-testing process on the strength of the hearing referee's determination of causation, or reverse the decision and remand to the WCAC for further consideration of the jurisdiction issue and the appropriate standard with which it may review such findings made by a hearing referee.

GRIFFIN, J., concurred with RILEY, J.

BRICKLEY, J. (*dissenting*). The majority incorrectly characterizes the ruling of the Court of Appeals in this matter as one of fact and does not address the legal question that Court decided. The issue is whether, as a matter of law, plaintiff's evidence that she could not perform her work to her former employer's satisfaction is sufficient under the standard required by MCL 418.301(4); MSA 17.237(301)(4).* The defining standard regarding whether a worker is disabled is broader than work history with one employer. The statute requires an impairment in the employee's general field of employment rather than employability with one specific employer. Absent any evidence regarding the plaintiff's general employability as a medical technologist, I would hold that the evidence presented did not, as a matter of law, meet the plaintiff's burden of proof.

Further, for the reasons I dissented in *Sobotka v Chrysler Corp (After Remand),* 447 Mich 1; 523 NW2d 454 (1994), even if the plaintiff has proven a

---

* I do not agree with the view expressed in the dissenting opinion that suggests a remand to the Worker's Compensation Appellate Commission for a determination of whether it has jurisdiction to decide a reason for termination as it relates to causation in a worker's compensation claim because the finding of permanent disability does not need a resolution of the issue why the plaintiff was asked to resign. A worker's status as disabled is not dependent on the reasons for termination with a particular employer. The WCAB wrote that it suspected that the reason for the termination was the disability, but it would not make a finding because it was not asked to.

The employer's defense that it had noninjury reasons for terminating the worker is not dispositive but merely relevant as an attack on the causal connection between the work-related injury and the worker's lack of employment.

Disabled persons are frequently returned to work. Some are able to perform the required tasks when a return is attempted and some are not. A person fitting the statutory definition of disabled might be asked to resign for legitimate reasons, but that person should not lose his disabled status because he had been functioning to the employer's satisfaction until the time of discharge. In such a situation, the employee will, as a matter of proofs, have to overcome the strong presumption of having recovered, which can be inferred from the employment history.

work-related disability, I would remand for a re-determination of whether the injury is partial or total. If partial, a determination of impairment of wage-earning capacity should be made before an assessment of the proper amount of compensation can be set.