Young, J.
Plaintiff sought, and the magistrate awarded, benefits under the Worker’s Disability Compensation Act, MCL 418.301 et seq., on the basis of aggravation of the symptoms of a nonwork-related condition. We hold that a claimant attempting to establish a compensable, work-related[1] injury must prove that the injury is medically distinguishable from a preexisting nonwork-related condition in order to establish the existence of a “personal injury” under § 301(1). Accordingly, we remand this case to the Worker’s Compensation Appellate Commission for further proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
The facts in this case are not contested. At the time plaintiff began working for defendant in 1996, he had a preexisting neck condition that was asymptomatic.[2] According to plaintiff, his work for defendant caused his neck pain to return and increase.
*223 The magistrate awarded plaintiff benefits for the aggravation of his symptoms. Of special note, the magistrate held that plaintiff suffered from “post surgical changes” of the cervical spine, but that these “conditions were not caused by his employment with [defendant.” Furthermore, the magistrate held that the employment did not contribute to or aggravate the preexisting condition:
Mr. Rakestraw’s pathological postsurgical changes and spondylosis of the cervical spine were not contributed to, aggravated or accelerated in a significant manner as a result of his work activities. The medical proofs would not sustain a finding of a change in pathology related to any work injury or work activities. [Emphasis added.]
However, the magistrate held that plaintiff’s employment aggravated the symptoms of the preexisting neck condition.[3] The magistrate determined that plaintiff was partially disabled as a result of the aggravated symptoms and granted an open award of benefits. The wcac reluctantly affirmed on the basis of Court of Appeals authority. However, the WCAC suggested that the Court of Appeals case law, which the wcac was required to follow, did not properly follow this Court’s precedent. The Court of Appeals denied leave to appeal. Defendant sought leave to appeal with this Court, which was granted.
*224 I. STANDARD OP REVIEW
This Court’s review of a decision by the WCAC is limited. In the absence of fraud, we must consider the wcac’s findings of fact conclusive if there is any competent evidence in the record to support them. MCL 418.861a(14); Mudel v Great Atlantic & Pacific Tea Co, 462 Mich 691, 701; 614 NW2d 607 (2000). However, questions of law in a worker’s compensation case are reviewed de novo. DiBenedetto v West Shore Hosp, 461 Mich 394, 401-402; 605 NW2d 300 (2000); MCL 418.861, 418.861a(14). Likewise, questions requiring statutory interpretation are questions of law that are reviewed de novo. Frank W Lynch Co v Flex Technologies, Inc, 463 Mich 578, 583; 624 NW2d 180 (2001); People v Rodriguez, 463 Mich 466, 471; 620 NW2d 13 (2000).
In interpreting a statute, our obligation is to discern the legislative intent that may reasonably be inferred from the words actually used in the statute. White v Ann Arbor, 406 Mich 554, 562; 281 NW2d 283 (1979). A bedrock principle of statutory construction is that “a clear and unambiguous statute leaves no room for judicial construction or interpretation.” Coleman v Gurwin, 443 Mich 59, 65; 503 NW2d 435 (1993). When the statutory language is unambiguous, the proper role of the judiciary is to simply apply the terms of the statute to the facts of a particular case. Turner v Auto Club Ins Ass’n, 448 Mich 22, 27; 528 NW2d 681 (1995). In addition, words used by the Legislature must be given their common, ordinary meaning. MCL 8.3a.
*225 II. analysis
A
MCL 418.301(1) states in pertinent part:
An employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act. . . . [Emphasis added.]
Under the clear and unambiguous language of the statute, an employee must establish that he has suffered “a personal injury arising out of and in the course of employment” in order to be eligible for compensation benefits.
B
Defendant maintains that the magistrate erred in awarding benefits because the pain plaintiff suffered was not a “personal injury” under the act.
On several occasions, this Court has held that symptoms such as pain, standing alone, do not establish a personal injury under the statute. Rather, a claimant must also establish that the symptom complained of is causally linked to an injury that arises “out of and in the course of employment” in order to be compensable.[4]
*226 The difference between a “personal injury” under § 301(1) and symptoms of a preexisting injury or illness that do not constitute a compensable injury was explored in Kostamo v Marquette Iron Mining Co, 405 Mich 105; 274 NW2d 411 (1979). Kostamo was a consolidation of cases in which the five plaintiffs either suffered a heart attack or experienced chest pain and sought compensation. Regarding plaintiffs Flszer and Hannula, the board determined that they had not suffered heart attacks. Rather, these plaintiffs were determined to suffer chest pain as a result of nonwork-related arteriosclerosis. In finding compensation unavailable to them, the Kostamo Court stated:
The workers’ compensation law does not provide compensation for a person afflicted by an illness or disease not caused or aggravated by his work or working conditions. Nor is a different result required because debility has progressed to the point where the worker cannot work without pain or injury. Accordingly, compensation cannot be awarded because the worker may suffer heart damage which would be work-related if he continued to work. Unless the work has accelerated or aggravated the illness, disease or deterioration and, thus, contributed to it, or the work, coupled with the illness, disease or deterioration, in fact causes an injury, compensation is not payable. [Id. at 116.[5]]
*227 In Miklik v Michigan Special Machine Co, 415 Mich 364; 329 NW2d 713 (1982), the plaintiff suffered from many preexisting conditions, including rheumatic heart disease, diabetes, obesity, hypertension, and liver damage. He applied for compensation benefits, claiming that the stress of his job caused hypertension and aggravated and accelerated his arteriosclerosis and rheumatic heart disease. He was determined to be totally disabled. Initially, this Court noted that a successful claimant must “establish by a preponderance of the evidence both a personal injury and a relationship between the injury and the workplace.” Id. at 367. Turning to the merits of the case, this Court held that arteriosclerosis, standing alone, was insufficient to establish a compensable injury:
However, even though arteriosclerosis alone does not justify compensation, neither does it bar compensation. Heart damage, such as would result from a heart attack, is compensable if linked by sufficient evidence to the workplace
The wcab, upon remand, accepted medical testimony that Miklik’s health problems were job-related, and then found them to be compensable. The board failed to follow Kostamo’s direction that in order for there to be compensation there first must be an injury. It is impossible to turn arteriosclerosis into compensable heart damage merely by labeling it so. The board’s opinion, worded in conclusory terms, ignored this premise of Kostamo. Testimony, at most, showed the progressive effects of arteriosclerosis, not separate heart damage. [Id. at 368-369 (emphasis added).]
In Farrington v Total Petroleum, Inc, 442 Mich 201; 501 NW2d 76 (1993), this Court reviewed the 1980 legislative amendments that added the “significant manner” test to recovery of benefits for mental disabilities and conditions of the aging process. The Court cited *228 the Kostamo holding, stating that a claimant must prove “[t]hat the alleged cardiac injury resulting from work activities went beyond the manifestation of symptoms of the underlying disease. The heart injury must be significantly caused or aggravated by employment considering the totality of all the occupational factors and the claimant’s health circumstances and nonoccupational factors.” Id. at 216-217 (emphasis added).
Thus, several cases from this Court have articulated the principle that, where an employee claims to have suffered an injury whose symptoms are consistent with a preexisting condition, the claimant must establish the existence of a work-related injury that extends “beyond the manifestation of symptoms” of the underlying preexisting condition. Id. at 216.
C
Despite the holdings in Kostamo, Miklik, and Farrington, plaintiff cites a body of case law developed in the Court of Appeals holding that aggravation of the symptoms of a preexisting condition alone constitutes a compensable injury under § 301(1).[6] The rationale of this line of Court of Appeals cases appears to emanate from Carter v Gen Motors Corp, 361 Mich 577; 106 NW2d 105 (1960).
*229 In Carter, the plaintiff had a personality disorder that made him more susceptible to psychotic breakdowns. His condition worsened to paranoid schizophrenia because of the stresses of his employment. He was awarded benefits. This Court found that his benefits should have stopped on September 11, 1957, because the plaintiff stopped showing signs of schizophrenia on that date. The principal issue decided in Carter was whether there had to be a single incident causing the breakdown in order for benefits to be awarded. This Court held that there did not have to be a single traumatizing event in order for benefits to be awarded.
Carter should not be read to support the holding that mere symptom aggravation, without a change in pathology, constitutes a “personal injury” under § 301(1).[7] In closing the award of benefits, the Carter Court noted that if the plaintiffs inability to return to work was attributable to schizophrenia, he would be entitled to continuing benefits. However, because his inability to return to work was attributable to a non-work-related “personality configuration,” the plaintiff was not entitled to continuing benefits. Id. at 594. Thus, the plaintiffs work-related schizophrenia, caused by “the pressure of his job and the pressure of his foreman,” id., was a distinct injury from the preexisting personality disorder. The first case citing *230 Carter for the principle that mere symptoms were sufficient to constitute a personal injury was promptly reversed by this Court. Fox v Detroit Plastic Molding Corporate Service, 106 Mich App 749; 308 NW2d 633 (1981); rev’d 417 Mich 901 (1983).
Holding that the aggravation of symptoms of a preexisting condition is compensable without finding a work-related injury under § 301(1) is clearly inconsistent with the clear language of the statute as well as case law from this Court. The statute requires proof that an employee suffered a personal injury “arising out of and in the course of employment” in order to establish entitlement to benefits. To the degree that the Court of Appeals decisions in Johnson v DePree Co, 134 Mich App 709; 352 NW2d 303 (1984); Thomas v Chrysler Corp, 164 Mich App 549; 418 NW2d 96 (1987); McDonald v Meijer, Inc, 188 Mich App 210; 469 NW2d 27 (1991); Anderson v Chrysler Corp, 189 Mich App 325; 471 NW2d 623 (1991); Siders v Gilco, Inc, 189 Mich App 670; 473 NW2d 802 (1991); Laury v Gen Motors Corp (On Remand, On Rehearing), 207 Mich App 249; 523 NW2d 633 (1994); Mattison v Pontiac Osteopathic Hosp, 242 Mich App 664; 620 NW2d 313 (2000), hold otherwise, they are overruled.
D
We reaffirm today that an employee must establish the existence of a work-related injury by a preponderance of the evidence in order to establish entitlement to benefits under § 301(1).[8] A symptom such as pain is evidence of injury, but does not, standing alone,
*231 conclusively establish the statutorily required causal connection to the workplace. In other words, evidence of a symptom is insufficient to establish a personal injury “arising out of and in the course of employment.”[9]
The text of the statute does not specifically demand that a claimant prove that his injury is “medically distinguishable” from a preexisting condition. However, the clear language of the statute does require the establishment of “a personal injury arising out of and in the course of employment.” Where a claimant experiences symptoms that are consistent with the progression of a preexisting condition, the burden rests on the claimant to differentiate between the preexisting condition, which is not compensable, and the work-related injury, which is compensable.[10] WTiere evidence of a medically distinguishable injury is offered, the differentiation is easily made and causation is established. However, where the symptoms complained of are equally attributable to the progression of a preexisting condition or a work-related injury, a plaintiff will fail to meet his burden of proving by a preponderance of the evidence that the injury arose “out of and in the course of employment”; stated otherwise, plaintiff will have failed to establish causation. Therefore, as a practical consideration, a claimant must prove that the injury claimed is distinct from the preexisting condition in order to *232 establish “a personal injury arising out of and in the course of employment” under § 301(1).
III. RESPONSE TO THE DISSENTS
Justice Weaver maintains that compensation is available “where the plaintiffs disability is the result of symptoms that occur at work.” Post at 235 n 3. Justice Kelly would apparently agree.
Such a view is remarkable, representing a radical departure from the text of the statute, as well as the basic proposition, consistent throughout the history of the wdca, that a claimant must establish a work-related injury as a necessary precondition to obtain benefits.[11] Under the dissents’ analyses, a claimant *233 would not be required to establish the existence of a work-related injury. Rather, a symptom of a condition that does not arise out of and in the course of employment, but that fortuitously manifests itself during the work day, would be compensable. However, no matter how diligently the dissents attempt to parse the statute, the statute clearly requires the establishment of a work-related injury, not a symptom that simply occurs in the workplace. MCL 418.301(1).
The dissents justify their unusual conclusions with little more than invocation of the doctrine that wdca matters are to be construed liberally because the statute is remedial in nature. Whatever the efficacy of this rule of construction, its application is logically justifiable only where the employer’s responsibility is established: where the employee proves the injury is work-related.[12] We believe it is inappropriate to utilize the “liberal construction” standard when the issue being considered is the initial qualifying matter whether the claimed injury falls within the WDCA regime. That decision, nearly jurisdictional in nature, is not to be tilted for or against either party as it is *234 made solely for the purpose of determining whether the worker’s compensation system will entertain the claim. Accordingly, we conclude that this approach to interpretation of the statute is inapplicable, and the resulting construction flawed.
IV. CONCLUSION
In this case, we hold that a claimant attempting to establish a compensable work-related injury must adduce evidence of the injury that is medically distinguishable from the preexisting nonwork-related condition in order establish the existence of a “personal injury” by a preponderance of the evidence under § 301(1). We remand this case to the wcac for further proceedings consistent with this opinion.
Corrigan, C.J., and Taylor and Markman, JJ., concurred with Young, J.

 As used in this opinion, a compensable, work-related injury is one that arises “out of and in the course of employment” in accordance with MCL 418.301(1).

 Plaintiff suffered from a herniated cervical disk that required surgeries in December 1991 and April 1992.

 Justice Weaver relies on the magistrate’s commentary regarding plaintiffs symptoms, not on the magistrate’s finding that the employment did not cause, contribute to, or aggravate the preexisting condition. Post at 236. In so doing, the dissent makes the same legal error as the magistrate in failing to recognize that symptoms that are not causally linked to a work-related ii\jury are not compensable as a matter of law.

 See Kostamo v Marquette Iron Mining Co, 405 Mich 105, 116-118; 274 NW2d 411 (1979); Miklik v Michigan Special Machine Co, 415 Mich 364; 329 NW2d 713 (1982); Farrington v Total Petroleum, Inc, 442 Mich 201; 501 NW2d 76 (1993); McKissack v Comprehensive Health Services of Detroit, 4AI Mich 57; 523 NW2d 444 (1994). See also Hagopian v Highland Park, 313 Mich 608, 621; 22 NW2d 116 (1946) (“The amended act *226 itself was not intended to cover aggravation of pre-existing disease without an accident or fortuitous event.”).

 Kostamo was decided before the 1980 amendment of the statute. 1980 PA 357 added MCL 418.301(2), which imposes a higher standard of contribution where an employee suffers a certain class of injury. Where an employee’s injury aggravates or accelerates a mental disability or a condition of the aging process, the employee after 1982 must show that the employment contributed to the nonwork-related condition “in a significant manner.”

 Johnson v DePree Co, 134 Mich App 709; 352 NW2d 303 (1984); Thomas v Chrysler Corp, 164 Mich App 549; 418 NW2d 96 (1987); McDonald v Meijer, Inc, 188 Mich App 210; 469 NW2d 27 (1991); Anderson v Chrysler Corp, 189 Mich App 325; 471 NW2d 623 (1991); Siders v Gilco, Inc, 189 Mich App 670; 473 NW2d 802 (1991); Laury v Gen Motors Corp (On Remand, On Rehearing), 207 Mich App 249; 523 NW2d 633 (1994); Mattison v Pontiac Osteopathic Hosp, 242 Mich App 664; 620 NW2d 313 (2000).

 Carter was also cited in Deziel v Difco Laboratories, Inc, 403 Mich 1; 268 NW2d 1 (1978), in support of Deziel’s holding that a subjective standard was appropriate in psychiatric cases to determine whether the injury arose out of and in the course of employment. However, the holding in Deziel was repudiated by the Legislature when it amended the act in 1980. Hurd v Ford Motor Co, 423 Mich 531, 534; 377 NW2d 300 (1985); Farrington, supra at 216 n 16; Robertson v DaimlerChrysler Corp, 465 Mich 732; 641 NW2d 567 (2002).

 “Injury” is defined as “harm or damage done or sustained, especially bodily harm . . . Random House Webster’s College Dictionary (2001).

 “Symptom” is defined as “a sign or indication of something.” Random House Webster’s College Dictionary (2001).

 An employee bears the burden of proving the relationship between the injury and the workplace by a preponderance of the evidence. Aquilina v Gen Motors Corp, 403 Mich 206, 211; 267 NW2d 923 (1978).

 Justice Kelly accurately quotes the holding of the McKissack Court, which relied on the holding in Kostamo—that “worker’s compensation benefits may not be awarded simply because a worker is unable by reason of pain to continue with the work if the cause of the pain is illness or disease not caused or aggravated by the work or working conditions.” Post at 238 n 1.
However, we disagree with Justice Kelly’s conclusion that the McKissack quotation does not differentiate between a symptom and an injury. As the language in McKissack indicates, there is a distinction between “pain,” which is a symptom, and the “cause of the pain,” which is an iqjury, “illness or disease.”
In McKissack, a work-related iqjury was found by the wcab. 447 Mich 60, 62. In this case, the irrefutable truth is that neither dissenting opinion is able point to any holding that the “cause of [plaintiff’s] pain” was “illness or disease . . . caused or aggravated by the work or working conditions.” In fact, the magistrate specifically held that the workplace did not cause or aggravate the preexisting iqjury. Post at 238. Rather, plaintiff’s disability was premised on aggravated symptoms, without a finding of a work-related iqjury.
Justice Kelly would apparently excuse plaintiff from having to establish a work-related injury because “[s]imilar to the tip of an iceberg,” pain is frequently “the only symptom showing that an iqjury was sustained,” while the etiology of the pain “remains submerged.” Post at 239.
The clear language of the statute requires that a claimant prove the existence of an iqjury “arising out of and in the course of employment.” Simply put, a claimant must prove the presence of an iqjury as well as its *233 cause to establish a compensable claim. It is the responsibility of the Legislature, not this Court, to alter the language of the statute and relieve a plaintiffs evidentiary burden in those cases where the pathological basis of the symptom is difficult to ascertain.

 Once an employee has established the existence of an injury that arises out of and in the course of employment, the “liberal construction” standard could arguably be applicable in determining, for example, the extent of the employee’s injuries or his ability to return to work after rehabilitation. Yet we note that the Legislature has instructed that the “liberal construction” standard be utilized on only one occasion in the entire wdca. See MCL 418.354(17). Further, conventional rules of statutory construction are employed to resolve ambiguities, not negate the import of clear statutory requirements. Klapp v United Ins Group Agency, Inc, 468 Mich 459; 663 NW2d 447 (2003). The dissents identify no ambiguity at issue in this case. In any event, we do not address this question, as it is not before us in this case.