SIMPSON v BORBOLLA
CONSTRUCTION & CONCRETE SUPPLY, INC

Docket No. 264106. Submitted January 9, 2007, at Detroit. Decided January 25, 2007, at 9:15 a.m. Leave to appeal granted, 478 Mich 875.

Dennis G. Simpson sustained a fracture of the lunate bone in his left wrist while working as an ironworker in 1979, but did not seek medical treatment for the injury. On October 23, 2000, while carrying bundles of reinforcing rods and inserting them into concrete at his job with Borbolla Construction & Concrete Supply, Inc., Simpson's left wrist bothered him. Simpson did not resume work as an ironworker, and he was diagnosed as suffering from necrosis of the lunate bone as a consequence of the untreated fracture in 1979. A workers' compensation magistrate awarded Simpson workers' compensation benefits payable by Borbolla and its insurer, Cincinnati Insurance Company, for a disabling injury to Simpson's left wrist. The Workers' Compensation Appellate Commission (WCAC) affirmed the magistrate's decision. Borbolla and Cincinnati Insurance appealed by leave granted.

The Court of Appeals *held*:

1. Simpson was not required by the precedent set in *Rakestraw v Gen Dynamics Land Sys, Inc,* 469 Mich 220 (2003), to establish that the October 23, 2000, injury is medically distinguishable from the 1979 injury in order to be entitled to benefits under MCL 418.301(1). *Rakestraw* involved a preexisting condition unrelated to work and a subsequent work-related injury. Here, Simpson's 1979 injury and October 23, 2000, injury were both work-related.

2. MCL 418.301(1) provides that "[t]ime of injury or date of injury as used in this act in the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions that resulted in the employee's disability or death." In this case, there was evidence that Simpson, on his last day of work, October 23, 2000, was subjected to one of the conditions that resulted in his disability, i.e., placing weight or stress on the left wrist, notwithstanding Borbolla and Cincinnati Insurance's contention that Simpson on that date was performing work that was lighter than the work he had performed for most of his career as an ironworker.

Affirmed.

*Richard L. Warsh* for Dennis G. Simpson.

*Nicholas P. Moore* for Borbolla Construction & Concrete Supply, Inc., and Cincinnati Insurance Company.

*Lacey & Jones* (by *Gerald M. Marcinkoski*) for Fluor Constructors International, Inc., and Travelers Casualty and Surety Company.

Before: SAAD, P.J., and CAVANAGH and SCHUETTE, JJ.

PER CURIAM. Defendant Borbolla Construction & Concrete Supply, Inc., and its carrier, Cincinnati Insurance Company, were granted leave to appeal a June 29, 2005, order of the Workers' Compensation Appellate Commission (WCAC) that affirmed a magistrate's award of benefits to plaintiff for an injury to his left wrist.[1] Appellants contend that they are not the parties responsible for the payment of benefits. We disagree and affirm the decision of the WCAC.

Plaintiff was an ironworker. During his career, plaintiff worked various jobs for multiple employers, including appellant Borbolla Construction & Concrete Supply, Inc., and defendant Fluor Constructors International, Inc. Plaintiff performed all phases of ironwork, including post tensioning and welding, and he characterized his duties as "hard work."

In 1979, plaintiff was injured when a chain fell several stories onto his left wrist.[2] Plaintiff suffered a nondisplaced fracture of the lunate bone. The fracture went untreated, and the condition of plaintiff's left

---

[1] Plaintiff also sought benefits for injuries to his lungs and knees. However, the magistrate concluded that such benefits were not warranted, and there is no issue pertaining to those alleged injuries in this appeal.

[2] Plaintiff is left-handed.

wrist progressively worsened. However, despite the worsening condition, plaintiff continued to work.

On October 23, 2000, plaintiff worked for appellant Borbolla Construction & Concrete Supply, Inc. The job involved inserting reinforcing rods into concrete and required plaintiff to, among other things, carry bundles of rods. Plaintiff testified that his wrist bothered him while performing this work, but that he was able to finish the one-day job. Plaintiff has not worked as an ironworker since.

Dr. Howard Sawyer diagnosed plaintiff with a unrepaired, undiagnosed fracture of the lunate bone of the left wrist, which fracture progressed to dissolving necrosis of the bone. In Dr. Sawyer's opinion, plaintiff's continued use of his hands as an ironworker, after suffering the fracture in 1979, increased the rate of bone deterioration to the point that the condition precluded plaintiff from effectively using his wrist and performing most tasks of an ironworker.

Dr. Bala Prasad also diagnosed plaintiff with necrosis of the lunate bone. Dr. Prasad testified that the condition was directly related to the initial fracture suffered by plaintiff and likely developed within two years thereafter.

After considering the evidence presented at trial, the magistrate granted plaintiff an award of benefits for a disabling injury to his left wrist. The magistrate then concluded that, under MCL 418.301(1), appellants were the parties responsible for the payment of benefits because October 23, 2000, was the last date on which plaintiff was subjected to the conditions that resulted in his disability.[3] In arriving at this conclusion, the magistrate specifically mentioned the fact that, on plain-

---

[3] MCL 418.301(1) provides:

tiff's last day of work, October 23, 2000, plaintiff carried bundles of iron rods weighing up to 150 pounds and that it was this type of activity that accelerated the worsening of plaintiff's wrist condition.

Appellants appealed the magistrate's decision to the WCAC. In the WCAC, appellants claimed that the magistrate's decision contravened *Rakestraw v Gen Dynamics Land Sys, Inc*, 469 Mich 220; 666 NW2d 199 (2003), because there was no evidence that plaintiff suffered an injury on October 23, 2000, that was "medically distinguishable" from any preexisting injury resulting from the 1979 fracture. Appellants also claimed that the magistrate erred in applying MCL 418.301(1) because, inasmuch as the work plaintiff performed on October 23, 2000, was lighter duty than the usual ironwork he performed during the bulk of his career, the working conditions on his last day of work were not the same as those that caused his disability.

The WCAC found appellants' claims to be without merit. In regard to appellants' *Rakestraw* claim, the WCAC concluded that plaintiff's current, disabling condition was "medically distinguishable" from the broken bone suffered in 1979. As for appellants' MCL 418.301(1) claim, the WCAC concluded that plaintiff's work on October 23, 2000, was sufficiently similar to his previous ironworking jobs such that October 23, 2000, was the proper date of injury under that statutory

---

An employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act. . . . Time of injury or date of injury as used in this act in the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions that resulted in the employee's disability or death.

provision. See *Simpson v Borbolla Constr & Concrete Supply Inc*, 2005 Mich ACO 153.

This Court granted appellants' application for leave to appeal the WCAC's decision.

The WCAC must review the magistrate's decision under the "substantial evidence" standard, while this Court reviews the WCAC's decision under the "any evidence" standard. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 709; 614 NW2d 607 (2000). Review by this Court begins with the WCAC's decision, not the magistrate's. *Id.* If there is any evidence supporting the WCAC's factual findings, and if the WCAC did not misapprehend its administrative appellate role in reviewing the magistrate's decision, then this Court should treat the WCAC's factual findings as conclusive. *Id.* at 709-710. This Court reviews questions of law in any WCAC order under a de novo standard. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000). A decision of the WCAC is subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework. *Id.* at 401-402.

First, appellants claim that the magistrate and the WCAC erred in applying our Supreme Court's decision in *Rakestraw, supra*. We disagree.

In *Rakestraw*, the plaintiff had a preexisting neck injury that was, at the time he began his employment with the defendant, asymptomatic. However, according to the plaintiff, the work he performed for the defendant caused pain in his neck. The workers' compensation magistrate found that, although the pathology of the underlying neck condition was not aggravated by the plaintiff's work, the symptoms of the preexisting neck condition were aggravated by the work. The magistrate then went on to award benefits as a result of the aggravated symptoms. The WCAC affirmed the magistrate's decision.

Our Supreme Court remanded the matter for further proceedings, holding that a claimant attempting to establish a compensable work-related injury must prove that the injury is "medically distinguishable" from a preexisting condition not related to work in order to establish the existence of a "personal injury" under MCL 418.301(1). The Supreme Court stated:

> We reaffirm today that an employee must establish the existence of a work-related injury by a preponderance of the evidence in order to establish entitlement to benefits under § 301(1). A symptom such as pain is *evidence* of injury, but does not, standing alone, conclusively establish the statutorily required causal connection to the work-place. In other words, evidence of a symptom is insufficient to establish a personal injury "arising out of and in the course of employment." [*Rakestraw*, *supra* at 230-231 (emphasis in original).]

The Supreme Court went on:

> Where a claimant experiences symptoms that are consistent with the progression of a preexisting condition, the burden rests on the claimant to differentiate between the preexisting condition, which is *not* compensable, and the work-related injury, which *is* compensable. Where evidence of a medically distinguishable injury is offered, the differentiation is easily made and causation is established. However, where the symptoms complained of are *equally* attributable to the progression of a preexisting condition or a work-related injury, a plaintiff will fail to meet his burden of proving by a preponderance of the evidence that the injury arose "out of and in the course of employment"; stated otherwise, plaintiff will have failed to establish causation. Therefore, as a practical consideration, a claimant must prove that the injury claimed is distinct from the preexisting condition in order to establish "a personal injury arising out of and in the course of employment" under § 301(1). [*Id.* at 231-232 (emphasis in original).]

In this case, appellants argue that plaintiff has failed to satisfy *Rakestraw* because there was no evidence that he suffered a "medically distinguishable" injury on October 23, 2000. We hold that *Rakestraw* is factually distinguishable and therefore inapplicable.

In *Rakestraw*, the plaintiff's preexisting condition was not work-related, whereas, in the instant case, plaintiff's initial left wrist injury occurred during the course of his employment as an ironworker in 1979. Therefore, the instant case is not like *Rakestraw*, where an employee attempted to establish a compensable injury by relying on symptoms that could be attributed to the progression of a preexisting condition unrelated to work. This distinction is of great import, as the focus of *Rakestraw* was clearly on causation, i.e., whether the plaintiff's injury arose out of and in the course of employment. *Id.* at 225, 230-231. The significance of the preexisting condition in *Rakestraw* was not so much that it was preexisting, but rather that it was not work-related. The purpose of requiring a "medically distinguishable," work-related injury in *Rakestraw* was to establish causation, not to simply distinguish the preexisting condition from a "new" injury. Because of *Rakestraw*'s focus on establishing a causal connection to the workplace, which is not an issue in the instant case, the factual distinctions between *Rakestraw* and the case at bar are significant, such that *Rakestraw* is simply inapplicable.[4]

---

[4] In its decision, the WCAC stated that *Rakestraw* applies in circumstances where the preexisting injury is work-related. Although we are of the opinion that the WCAC erred in this regard, because the WCAC ultimately concluded that *Rakestraw* did not preclude an award of benefits to plaintiff, the error does not warrant relief. Further, in any event, even assuming that *Rakestraw* is applicable, the medical evidence presented below supports the WCAC's finding that plaintiff's current condition is "medically distinguishable" from the injury he suffered in 1979.

Next, appellants claim that the WCAC's decision violates MCL 418.301(1). Appellants note that the relevant date of injury under that provision is "the last day of work in the employment in which the employee was last subjected to the conditions that resulted in the employee's disability" and argue that, in this case, plaintiff's work in October 2000 was much "lighter" than the work plaintiff had performed for the bulk of his career as an ironworker. In essence, appellants contend that plaintiff's work for a single day on October 23, 2000, did not subject plaintiff to the conditions that caused the disability, and did not aggravate plaintiff's condition. Under this Court's limited standard of review, we are not convinced that relief is warranted.

Dr. Sawyer indicated that, after the injury suffered by plaintiff in 1979, plaintiff's use of his wrist increased the rate of deterioration until plaintiff simply could not effectively use his wrist anymore. Dr. Sawyer further noted that placing weight on a joint increases deterioration. A reasonable inference from this testimony is that one of the conditions that resulted in plaintiff's disability was placing a significant amount of weight, or stress, on his wrist during the course of his work. At trial, plaintiff testified that, on his last day of work, while the iron bars he was lifting were relatively small, that simply meant that he carried more of them than he might otherwise have, and that he lifted between 100 and 150 pounds of bars at a time.[5] Therefore, the amount of weight lifted by plaintiff, and the attendant stress on his wrist, on his last day of work was significant. Consequently, in our opinion, there is evidence in the record to support the finding that, on October 23, 2000, plaintiff was subjected to the conditions that

---

[5] It appears that plaintiff may have had the assistance of one coworker when lifting the bars.

resulted in his disability. As a result, October 23, 2000, is the proper date of injury under MCL 418.301(1).

Affirmed.