MATTISON v PONTIAC OSTEOPATHIC HOSPITAL

Docket Nos. 218082, 218086. Submitted May 10, 2000, at Detroit. Decided
    September 29, 2000, at 9:00 A.M.

    Doris Mattison sought worker's compensation benefits, claiming that
    she was disabled from her employment with Pontiac Osteopathic
    Hospital as a result of a specific injury (an injury to her left ankle
    and a ganglion cyst that developed as a result of the trauma) in
    June 1992 and alleging that her work up through and including her
    last day of work on July 4, 1995 (a last-day-of-work injury), aggra-
    vated or contributed to her disability. A magistrate found that the
    plaintiff continued to suffer from the effects of the June 1992 injury.
    and that she was entitled to benefits on the basis of an ongoing
    symptomatic aggravation of the osteoarthritis that had developed
    in her left ankle. The magistrate noted that, pursuant to MCL
    418.301(2); MSA 17.237(301)(2), osteoarthritis, as a condition of the
    aging process, is compensable only if it is aggravated or acceler-
    ated by the employment in a significant manner, and found no evi-
    dence that the pathology of the left ankle was significantly aggra-
    vated by the plaintiff's employment. However, the magistrate found
    that the plaintiff was entitled to benefits because "she has consist-
    ently exhibited greater and unabated symptomatology on the left
    since she last worked in July 1995." The magistrate also denied the
    defendant's request for a credit for the wages earned by the plain-
    tiff at a part-time job after July 4, 1995 (the plaintiff had worked
    the part-time job from January 1995 until November 1996). The
    Worker's Compensation Appellate Commission (WCAC) affirmed the
    magistrate's conclusion that the plaintiff was disabled because of
    the ganglion cyst, but rejected the magistrate's alternative basis for
    awarding benefits, and opined that benefits should not be awarded
    when symptoms only are affected by work. The WCAC concluded
    that symptomatic aggravation is not a proper basis for awarding
    benefits where the underlying condition is one governed by subsec-
    tion 301(2), which requires that the claimant show that the work
    aggravated or accelerated the condition in a significant manner,
    and reversed that portion of the magistrate's decision. The WCAC
    also affirmed the magistrate's denial of a credit for wages earned at
    the part-time job, finding that the wages from the part-time job
    were not replacement wages for the employment by the hospital

because the plaintiff had been working both jobs. Both parties appealed by leave granted, and their appeals were consolidated.

The Court of Appeals *held*:

1. The well-settled law of this state that benefits may be awarded when a claimant's work only aggravates or exacerbates the symptoms of an underlying condition, even if the underlying condition itself was not caused, aggravated, or accelerated by the work, also applies in cases governed by subsection 301(2), which provides that a mental disability or condition of the aging process is compensable, where the claimant shows that the employment contributed to or aggravated or accelerated the mental disability or condition of the aging process in a significant manner. The WCAC erred in finding that a symptomatic aggravation of a condition of the aging process is not compensable under the worker's compensation act.

2. When the underlying condition is the sort governed by subsection 301(2), a claimant must show that the work aggravated or exacerbated the symptoms of the condition in a significant manner, i.e., that the work played a significant role in aggravating the symptoms, considering the totality of both work and nonwork factors. The matter must be remanded to the WCAC for a determination whether the plaintiff's work aggravated the symptoms of her condition in a significant manner.

3. If the WCAC finds that the plaintiff's hospital employment aggravated her symptoms in a significant manner, then the plaintiff, as a matter of law, suffered a last-day-of-work injury and her average weekly wage for the purpose of computing benefits means the weekly wage she earned in all employment at the time of the injury. A partially disabled employee is entitled to eighty percent of the difference between the after-tax average weekly wage earned before the injury and the after-tax average weekly wage earned after the injury. If, on remand, the WCAC finds that the plaintiff's employment aggravated the symptoms of her condition in a significant manner, it should determine whether the benefit amount established by the magistrate is appropriate and adjust the amount as necessary.

4. The order of the WCAC must be affirmed to the extent that it found that the defendant is not entitled to a direct credit for the plaintiff's wages from her part-time job.

Affirmed in part, reversed in part, and remanded.

1. WORKER'S COMPENSATION — AGGRAVATION OF SYMPTOMS — CONDITIONS OF AGING PROCESS.

The well-settled law that worker's compensation benefits may be awarded when a claimant's work only aggravates or exacerbates

the symptoms of an underlying condition, even if the underlying condition itself was not caused, aggravated, or accelerated by the work, also applies in cases governed by MCL 418.301(2); MSA 17.237(301)(2), which provides that a mental disability or condition of the aging process is compensable, where a claimant shows that the employment contributed to or aggravated or accelerated the mental disability or condition of the aging process in a significant manner; a claimant with an underlying condition of the sort governed by subsection 301(2) must show that the work aggravated or exacerbated the symptoms of the condition in a significant manner, considering the totality of both work and nonwork factors.

2. WORKER'S COMPENSATION — AVERAGE WEEKLY WAGE — MULTIPLE EMPLOYMENTS — PARTIAL DISABILITY.

A worker's compensation claimant's "average weekly wage" for purposes of computing benefits is the weekly wage earned by the claimant at the time of the claimant's injury in all employment, even if the injury does not disable the employee from all employment; a partially disabled claimant is entitled to eighty percent of the difference between the after-tax average weekly wage earned before the injury and the after-tax average weekly wage the claimant is able to earn after the injury (MCL 418.361[1], 418.371[2]; MSA 17.237[361][1], 17.237[371][2]).

*Zamler, Mellen & Shiffman, P.C.* (by *Michael D. Lask*) (*Daryl Royal*, of Counsel), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Paul F. Paternoster*), for the defendant.

Before: MURPHY, P.J., and COLLINS and OWENS, JJ.

COLLINS, J. In these consolidated appeals, plaintiff Doris Mattison and defendant Pontiac Osteopathic Hospital each appeal by leave granted an order of the Worker's Compensation Appellate Commission (WCAC) that reversed in part the magistrate's decision granting plaintiff an open award of benefits and denied defendant's claim for a credit for wages paid to plaintiff by another employer. We affirm in part, reverse in part, and remand to the WCAC.

Plaintiff began working for defendant in 1992 as a nurse's assistant. Her jobs included bathing patients, passing bed trays, walking patients in the hallways, giving back rubs, and changing beds. Plaintiff testified that on June 16, 1992, she slipped going up the stairs at work, turning her left ankle. She was eventually diagnosed as suffering from a ganglion cyst that developed as a result of the trauma. Plaintiff returned to work in August 1992, although she testified that she continued to feel a lot of pain. Over the next few years, plaintiff complained of pain in both feet. Plaintiff was diagnosed as suffering from osteoarthritis, and x-rays show arthritic changes in both feet.

In January 1995, plaintiff began working a second job, with Operation Able, processing applications for Ford, Chrysler, and General Motors, and registering applicants for job services. Plaintiff worked four hours a day, from 10:00 A.M. until 2:00 P.M., and then reported for her 3:00 P.M. shift at the defendant hospital. She testified that the work at Operation Able did not bother her feet because she sat all the time.

Plaintiff's last day of work at the hospital was July 4, 1995. She testified that she did not feel she could continue to work because of the pain. Plaintiff continued to work for Operation Able until November 1996. She left that job, not because of any problems with her feet, but to help her daughter-in-law in New Jersey.

Plaintiff filed a petition for benefits, claiming that she is disabled as a result of a specific event injury in June 1992 and a last-day-of-work injury, i.e., plaintiff alleged that her work up through and including her last day of work aggravated or contributed to her disability.

In an opinion and order mailed September 30, 1997, the magistrate found no grounds for awarding benefits on the basis of any complaints regarding plaintiff's right foot. The magistrate did find that plaintiff continued to suffer from the effects of the June 16, 1992, left ankle twisting, specifically the ganglion cyst and the scar tissue resulting from injections she received in the area in an attempt to eliminate the cyst. The magistrate also found that plaintiff was entitled to benefits on the basis of an ongoing symptomatic aggravation of the osteoarthritis in her left ankle. The magistrate noted that pursuant to subsection 301(2) of the Worker's Disability Compensation Act (WDCA), MCL 418.301(2); MSA 17.237(301)(2), osteoarthritis as a condition of the aging process is compensable only if it is aggravated or accelerated by the employment in a significant manner. The magistrate found no evidence that the pathology of the left ankle was significantly aggravated by plaintiff's employment. However, citing *McDonald v Meijer, Inc*, 188 Mich App 210; 469 NW2d 27 (1991), the magistrate found that plaintiff was nevertheless entitled to benefits because "she has consistently exhibited greater and unabated symptomatology on the left since she last worked in July 1995." Finally, the magistrate denied defendant's request for a credit for wages earned by plaintiff at Operation Able after she left defendant's employ. The magistrate found that "plaintiff had a separate and concurrent wage earning capacity at that part-time job while she worked for the hospital." The magistrate did credit defendant for wages earned by plaintiff while baby-sitting in December 1996.

Defendant appealed, and in an opinion and order dated February 10, 1999, the WCAC affirmed with a modification. The WCAC found that the magistrate's conclusion that plaintiff is disabled because of the ganglion cyst was based on competent, material, and substantial evidence on the whole record and so affirmed. However, the WCAC rejected the alternative basis for awarding benefits. The WCAC engaged in a lengthy review of this Court's decisions regarding the propriety of awarding benefits when work does not cause or aggravate the underlying pathology, but only aggravates the symptoms of a nonwork-related condition. The WCAC stated its belief that this Court has misinterpreted a number of Supreme Court decisions, and opined that benefits should not be awarded when symptoms only are affected by work. The WCAC noted that no published decision addressed the question whether benefits may be awarded on this basis when the underlying condition is one governed by subsection 301(2), such as plaintiff's osteoarthritis, which requires that a claimant show that the work aggravated or accelerated the condition in a significant manner. The WCAC concluded that symptomatic aggravation is not a proper basis for awarding benefits under subsection 301(2), and so reversed this portion of the magistrate's decision.

Finally, the WCAC affirmed the magistrate's denial of a credit for wages earned at Operation Able. Citing *Bowles v James Lumber Co*, 345 Mich 292; 75 NW2d 822 (1956), the WCAC held that it is "well established that an employer is not credited for earnings which do not replace those earnings in the employment where the injury occurred." Because plaintiff was working concurrently for the hospital and Operation

Able, the WCAC held that wages from the latter employer cannot be replacement wages for the hospital employment.

In Docket No. 218082, plaintiff argues that the WCAC erred in finding that, as a matter of law, a symptomatic aggravation of a condition of the aging process is not compensable under the WDCA, MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*[1] We agree. The WCAC must consider the magistrate's findings of fact conclusive if they are supported by competent, material, and substantial evidence on the entire record. MCL 418.861a(3); MSA 17.237(861a)(3); *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 698-699; 614 NW2d 607 (2000). Substantial evidence is evidence that a reasonable person would accept as adequate to justify a conclusion. *Id.* Where substantial evidence on the whole record does not exist to support the magistrate's factual finding, the WCAC may substitute its own finding of fact for that of the magistrate. *Id.* at 699-700. In contrast, in the absence of fraud, this Court must treat findings of fact made by the WCAC acting within its powers as conclusive. MCL 418.861a(14); MSA 17.237(861a)(14); *Mudel, supra* at 700. This Court may review questions of law involved with any final order of the WCAC. MCL 418.861a(3) and (14); MSA 17.237(861a)(3) and (14). However, this Court does not independently review the question whether the magistrate's findings of fact are supported by substantial evidence. *Mudel, supra* at 700-701. Rather, this Court's review is at an end once it is satisfied that the WCAC has understood and properly

---

[1] Plaintiff does not contest on appeal the magistrate's finding that her osteoarthritis is a condition of the aging process.

applied its own standard of review. *Id.* at 703-704. As long as the WCAC did not "misapprehend or grossly misapply" the "substantial evidence" standard test and there exists in the record evidence supporting the WCAC's decision, then this Court must treat the WCAC's factual decisions as conclusive. *Id.*

It is the settled law of this state that benefits may be awarded when a claimant's work only aggravates or exacerbates the symptoms of an underlying condition, even if the underlying condition itself was not caused, aggravated, or accelerated by the work. In *Laury v General Motors Co (On Remand, On Rehearing)*, 207 Mich App 249; 523 NW2d 633 (1994), two members of the panel affirmed an award of benefits that was based on aggravation of symptoms alone, but stated their belief that benefits should not be awarded unless the underlying condition itself was caused or aggravated by work. Because controlling authority held otherwise, they reluctantly affirmed. One member of the panel concurred, expressing the belief that symptomatic aggravation is a proper basis for awarding benefits. The judges of this Court declined to convene a special panel to resolve the implicit conflict. 207 Mich App 801 (1994).

The question presented is whether the result should be different in cases governed by subsection 301(2), i.e., in cases where a claimant must show that the employment contributed to or aggravated or accelerated a mental disability or condition of the aging process in a significant manner.[2] We hold that the same

---

[2] MCL 418.301(2); MSA 17.237(301)(2) provides as follows:

Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be

rule of law applies. Awarding benefits on the basis of the aggravation of symptoms alone accords with the policy underlying the act. The objective of the WDCA is to compensate a claimant for the loss of an earning capacity caused by a work-related injury. *Kuty v DAIIE*, 140 Mich App 310, 313; 364 NW2d 315 (1985). Even when a preexisting *condition* was not caused or aggravated by employment, if an employee is unable to work because work-related events have aggravated the *symptoms* of the condition to the point of disability, the employer should be liable for wage-loss benefits until the symptoms subside to their preexisting level. See *McDonald, supra* at 215-216. But for the employee's work for the employer, the employee would not be disabled. It is therefore appropriate to hold the employer liable for payment of benefits during what is usually a limited period. On the other hand, because the employment did not cause or aggravate the underlying condition, the employer should not be liable indefinitely, but only until the symptoms return to their preaggravated condition. *Id.*

In arriving at the contrary conclusion, the WCAC relied on *Farrington v Total Petroleum, Inc*, 442 Mich 201; 501 NW2d 76 (1993). However, the question whether aggravation of symptoms to the point of disability was sufficient to qualify a claimant for compensation was not before the *Farrington* Court. Rather, with regard to subsection 301(2), the *Farrington* Court addressed the question whether the "significant manner" amendment of both subsections

---

compensable if contributed to or aggravated or accelerated by the employment in a significant manner. Mental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof.

401(2)(b), MCL 418.401(2)(b); MSA 17.237(401)(2)(b), and 301(2) of the WDCA applied only to occupational diseases under chapter 4 of the WDCA, or also applied to specific injuries under chapter 3. Because the Court's statement with regard to the manifestation of symptoms was dictum and specifically referred to cardiac cases, *Farrington, supra* at 216, we do not find *Farrington* to be controlling precedent.

However, on the basis of the Supreme Court's holding in *Farrington*, we find that when the underlying condition is the sort governed by subsection 301(2), a claimant must show that the work aggravated or exacerbated the symptoms of the condition in a significant manner, i.e., that the work played a significant role in aggravating the symptoms, considering the totality of both work and nonwork factors. *Farrington, supra* at 215-216. This accords with legislative policy as reflected in subsection 301(2), which imposes a higher standard on a plaintiff claiming that a condition of the aging process or a mental disability was aggravated or exacerbated by his work. *Id.*

Because the magistrate did not consider the degree to which plaintiff's employment aggravated her symptoms, we remand to the WCAC for a determination whether plaintiff's work aggravated the symptoms of her condition in a significant manner. MCL 418.861a(14); MSA 17.237(861a)(14); *Mudel, supra* at 713-714. If the WCAC finds that the record is insufficient to make this factual determination, it must remand to the magistrate. *Id.*

We address next defendant's argument in Docket No. 218086 that the WCAC erred in affirming the magistrate's ruling that defendant was not entitled to a credit for wages plaintiff earned at Operation Able.

The magistrate's ruling in this regard was made taking into account the finding of a single injury date of June 16, 1992, which was before plaintiff's employment at Operation Able. Plaintiff argued before the WCAC that the magistrate should have found a later injury date of July 4, 1995, plaintiff's last day of work at the hospital, at which time she was also employed by Operation Able, and then determined plaintiff's benefits under MCL 418.361(1); MSA 17.237(361)(1), which governs situations where a plaintiff's incapacity for work resulting from a personal injury is partial. See *Lawrence v Toys R Us*, 453 Mich 112, 121; 551 NW2d 155 (1996). Because the WCAC found that symptomatic aggravation of a condition of the aging process is not compensable under the WDCA, it never addressed the date of injury issue. Rather, the WCAC simply found that the defendant was not entitled to credit "for earnings which do not replace those earnings in the employment where the injury occurred," and affirmed the magistrate's finding.

Given the magistrate's factual finding that plaintiff experienced aggravation of the symptoms of her condition to the point of disability on her last day of work for the hospital, if the WCAC finds that plaintiff's hospital employment aggravated plaintiff's symptoms in a significant manner, then as a matter of law, plaintiff suffered a last-day-of-work injury. MCL 418.301(1); MSA 17.237(301)(1). Subsection 371(2), MCL 418.371(2); MSA 17.237(371)(2), provides that the "average weekly wage" for purposes of computing benefits "means the weekly wage earned by the employee at the time of the employee's injury in all employment . . . ." In *Lawrence, supra* at 122-123, our Supreme Court held that the statute requires the aver-

age weekly wage to be computed on the basis of all employment, even if the injury does not disable the employee from all employment. An employer is protected from paying unnecessary compensation by subsection 361(1), which provides that a partially disabled employee is entitled to eighty percent *of the difference* between the after-tax average weekly wage earned before the injury and the after-tax average weekly wage the employee is able to earn after the injury. *Lawrence, supra* at 124-125.

Here, plaintiff's benefits were calculated on the basis of her hospital wages alone, using a single injury date of June 16, 1992. Under subsection 361(1), using July 4, 1995, as the injury date and taking all employment into account, plaintiff's benefits may differ from those calculated by the magistrate. In the event the WCAC determines that plaintiff's employment aggravated the symptoms of her condition in a significant manner, the WCAC should determine whether the benefit amount established by the magistrate is appropriate and adjust that amount if necessary. Again, if the record is insufficient for the WCAC to make such a determination, it must remand to the magistrate. *Mudel, supra* at 713-714. However, we affirm the decision of the WCAC to the extent that it found defendant is not entitled to a direct credit for plaintiff's Operation Able wages.

Affirmed in part, reversed in part, and remanded to the WCAC. We do not retain jurisdiction.