**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 30, 2003**

E. WAYNE RAKESTRAW,

    Plaintiff-Appellee,

v                                     No. 120996

GENERAL DYNAMICS LAND SYSTEMS, INC.

    Defendant-Appellant.

---

BEFORE THE ENTIRE BENCH

YOUNG, J.

    Plaintiff sought, and the magistrate awarded, benefits under the Worker's Disability Compensation Act, MCL 418.301 *et seq.*, on the basis of aggravation of the symptoms of a nonwork-related condition. We hold that a claimant attempting to establish a compensable, work-related[1] injury must prove that the injury is medically distinguishable from a

---

[1] As used in this opinion, a compensable, work-related injury is one that arises "out of and in the course of employment" in accordance with MCL 418.301(1).

preexisting nonwork-related condition in order to establish the existence of a "personal injury" under § 301(1). Accordingly, we remand this case to the Worker's Compensation Appellate Commission for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY

The facts in this case are not contested. At the time plaintiff began working for defendant in 1996, he had a preexisting neck condition that was asymptomatic.[2] According to plaintiff, his work for defendant caused his neck pain to return and increase.

The magistrate awarded plaintiff benefits for the aggravation of his symptoms. Of special note, the magistrate held that plaintiff suffered from "post surgical changes" of the cervical spine, but that these "conditions were not caused by his employment with [d]efendant." Furthermore, the magistrate held that the employment *did not* contribute to or aggravate the preexisting condition:

> Mr. Rakestraw's pathological postsurgical changes and spondylosis of the cervical spine were not contributed to, aggravated or accelerated in a significant manner as a result of his work activities. *The medical proofs would not sustain a finding of a change in pathology related to any work injury or work activities.* [Emphasis added.]

---

[2] Plaintiff suffered from a herniated cervical disk that required surgeries in December 1991 and April 1992.

2

However, the magistrate held that plaintiff's employment aggravated the *symptoms* of the preexisting neck condition. [3] The magistrate determined that plaintiff was partially disabled as a result of the aggravated symptoms and granted an open award of benefits. The WCAC reluctantly affirmed on the basis of Court of Appeals authority. However, the WCAC suggested that the Court of Appeals case law, which the WCAC was required to follow, did not properly follow this Court's precedent. The Court of Appeals denied leave to appeal. Defendant sought leave to appeal with this Court, which was granted.

## I. STANDARD OF REVIEW

This Court's review of a decision by the WCAC is limited. In the absence of fraud, we must consider the WCAC's findings of fact conclusive if there is any competent evidence in the record to support them. MCL 418.861a(14); *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 701; 614 NW2d 607 (2000). However, questions of law in a worker's compensation case are reviewed de novo. *DiBenedetto v West Shore Hosp*, 461

---

[3] Justice WEAVER relies on the magistrate's commentary regarding plaintiff's symptoms, not on the magistrate's finding that the employment did not cause, contribute to, or aggravate the preexisting condition. *Post* at 2. In so doing, the dissent makes the same legal error as the magistrate in failing to recognize that symptoms that are not causally linked to a work-related injury are not compensable *as a matter of law*.

Mich 394, 401-402; 605 NW2d 300 (2000); MCL 418.861, 418.861a(14). Likewise, questions requiring statutory interpretation are questions of law that are reviewed de novo. *Frank W Lynch Co v Flex Technologies, Inc,* 463 Mich 578, 583; 624 NW2d 180 (2001); *People v Rodriguez*, 463 Mich 466, 471; 620 NW2d 13 (2000).

In interpreting a statute, our obligation is to discern the legislative intent that may reasonably be inferred from the words actually used in the statute. *White v Ann Arbor*, 406 Mich 554, 562 281 NW2d 283 (1979). A bedrock principle of statutory construction is that "a clear and unambiguous statute leaves no room for judicial construction or interpretation." *Coleman v Gurwin*, 443 Mich 59, 65; 503 NW2d 435 (1993). When the statutory language is unambiguous, the proper role of the judiciary is to simply apply the terms of the statute to the facts of a particular case. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995). In addition, words used by the Legislature must be given their common, ordinary meaning. MCL 8.3a.

## II. ANALYSIS

### A

MCL 418.301(1) states in pertinent part:

> An employee, who receives a *personal injury arising out of and in the course of employment* by an employer who is subject to this act at the time of the injury, shall be paid compensation as

4

provided in this act. . . .[Emphasis added.]

Under the clear and unambiguous language of the statute, an employee must establish that he has suffered "a personal injury arising out of and in the course of employment" in order to be eligible for compensation benefits.

B

Defendant maintains that the magistrate erred in awarding benefits because the pain plaintiff suffered was not a "personal injury" under the act.

On several occasions, this Court has held that symptoms such as pain, standing alone, do not establish a personal injury under the statute. Rather, a claimant must also establish that the symptom complained of is causally linked to an injury that arises "out of and in the course of employment" in order to be compensable.[4]

The difference between a "personal injury" under § 301(1) and symptoms of a preexisting injury or illness that do *not* constitute a compensable injury was explored in *Kostamo v Marquette Iron Mining Co*, 405 Mich 105; 274 NW2d 411 (1979).

---

[4] See *Kostamo v Marquette Iron Mining Co*, 405 Mich 105, 116-118; 274 NW2d 411 (1979); *Miklik v Michigan Special Machine Co*, 415 Mich 364; 329 NW2d 713 (1982); *Farrington v Total Petroleum, Inc*, 442 Mich 201; 501 NW2d 76 (1993); *McKissack v Comprehensive Health Services of Detroit*, 447 Mich 57; 523 NW2d 444 (1994). See also *Hagopian v Highland Park*, 313 Mich 608, 621; 22 NW2d 116 (1946) ("The amended act itself was not intended to cover aggravation of pre-existing disease without an accident or fortuitous event.").

5

*Kostamo* was a consolidation of cases in which the five plaintiffs either suffered a heart attack or experienced chest pain and sought compensation. Regarding plaintiffs Fiszer and Hannula, the board determined that they had not suffered heart attacks. Rather, these plaintiffs were determined to suffer chest pain as a result of nonwork-related arteriosclerosis. In finding compensation unavailable to them, the *Kostamo* Court stated:

> The workers' compensation law does not provide compensation for a person afflicted by an illness or disease not caused or aggravated by his work or working conditions. Nor is a different result required because debility has progressed to the point where the worker cannot work without pain or injury. Accordingly, compensation cannot be awarded because the worker may suffer heart damage which would be work-related if he continued to work. Unless the work has accelerated or aggravated the illness, disease or deterioration and, thus, contributed to it, or the work, coupled with the illness, disease or deterioration, in fact causes an injury, compensation is not payable. [*Id.* at 116.[5]]

In *Miklik v Michigan Special Machine Co*, 415 Mich 364; 329 NW2d 713 (1982), the plaintiff suffered from many preexisting conditions, including rheumatic heart disease,

---

[5] *Kostamo* was decided before the 1980 amendment of the statute. 1980 PA 357 added MCL 418.301(2), which imposes a higher standard of contribution where an employee suffers a certain class of injury. Where an employee's injury aggravates or accelerates a mental disability or a condition of the aging process, the employee after 1982 must show that the employment contributed to the nonwork-related condition "in a significant manner."

diabetes, obesity, hypertension, and liver damage. He applied for compensation benefits, claiming that the stress of his job caused hypertension and aggravated and accelerated his arteriosclerosis and rheumatic heart disease. He was determined to be totally disabled. Initially, this Court noted that a successful claimant must "establish by a preponderance of the evidence both a personal injury and a relationship between the injury and the workplace." *Id*. at 367. Turning to the merits of the case, this Court held that arteriosclerosis, standing alone, was insufficient to establish a compensable injury:

> However, even though arteriosclerosis alone does not justify compensation, neither does it bar compensation. Heart damage, such as would result from a heart attack, is compensable if linked by sufficient evidence to the workplace. . . .
>
> The WCAB, upon remand, accepted medical testimony that Miklik's health problems were job-related, and then found them to be compensable. The board failed to follow *Kostamo's* direction that in order for there to be compensation *there first must be an injury*. It is impossible to turn arteriosclerosis into compensable heart damage merely by labeling it so. The board's opinion, worded in conclusory terms, ignored this premise of *Kostamo*. Testimony, at most, showed the progressive effects of arteriosclerosis, not *separate* heart damage. [*Id*. at 368-369 (emphasis added).]

In *Farrington v Total Petroleum, Inc*, 442 Mich 201; 501 NW2d 76 (1993), this Court reviewed the 1980 legislative amendments that added the "significant manner" test to

7

recovery of benefits for mental disabilities and conditions of the aging process. The Court cited the *Kostamo* holding, stating that a claimant must prove "[t]hat the alleged cardiac injury resulting from work activities went *beyond the manifestation of symptoms of the underlying disease*. The heart injury must be significantly caused or aggravated by employment considering the totality of all the occupational factors and the claimant's health circumstances and nonoccupational factors." *Id*. at 216-217 (emphasis added).

Thus, several cases from this Court have articulated the principle that, where an employee claims to have suffered an injury whose symptoms are consistent with a preexisting condition, the claimant must establish the existence of a work-related injury that extends "beyond the manifestation of symptoms" of the underlying preexisting condition. *Id*. at 216.

C

Despite the holdings in *Kostamo*, *Miklik*, and *Farrington*, plaintiff cites a body of case law developed in the Court of Appeals holding that aggravation of the symptoms of a preexisting condition alone constitutes a compensable injury under § 301(1).[6] The rationale of this line of Court of

---

[6] *Johnson v DePree Co*, 134 Mich App 709; 352 NW2d 303 (1984); *Thomas v Chrysler Corp*, 164 Mich App 549; 418 NW2d 96 (1987); *McDonald v Meijer, Inc*, 188 Mich App 210; 469 NW2d 27 (1991); *Anderson v Chrysler Corp,* 189 Mich App 325; 471 NW2d 623 (1991); *Siders v Gilco, Inc*, 189 Mich App 670; 473 NW2d

8

Appeals cases appears to emanate from *Carter v Gen Motors Corp*, 361 Mich 577; 106 NW2d 105 (1960).

In *Carter*, the plaintiff had a personality disorder that made him more susceptible to psychotic breakdowns. His condition worsened to paranoid schizophrenia because of the stresses of his employment. He was awarded benefits. This Court found that his benefits should have stopped on September 11, 1957, because the plaintiff stopped showing signs of schizophrenia on that date. The principal issue decided in *Carter* was whether there had to be a *single* incident causing the breakdown in order for benefits to be awarded. This Court held that there did not have to be a single traumatizing event in order for benefits to be awarded.

*Carter* should not be read to support the holding that mere symptom aggravation, without a change in pathology, constitutes a "personal injury" under § 301(1).[7] In closing the award of benefits, the *Carter* Court noted that if the

---

802 (1991); *Laury v Gen Motors Corp (On Remand, On Rehearing)*, 207 Mich App 249; 523 NW2d 633 (1994); *Mattison v Pontiac Osteopathic Hosp*, 242 Mich App 664; 620 NW2d 313 (2000).

[7] *Carter* was also cited in *Deziel v Difco Laboratories, Inc,* 403 Mich 1; 268 NW2d 1 (1978), in support of *Deziel's* holding that a subjective standard was appropriate in psychiatric cases to determine whether the injury arose out of and in the course of employment. However, the holding in *Deziel* was repudiated by the Legislature when it amended the act in 1980. *Hurd v Ford Motor Co,* 423 Mich 531, 534; 377 NW2d 300 (1985); *Farrington, supra* at 216 n 16; *Robertson v DaimlerChrysler Corp*, 465 Mich 732; 641 NW2d 567 (2002).

plaintiff's inability to return to work was attributable to schizophrenia, he would be entitled to continuing benefits. However, because his inability to return to work was attributable to a nonwork-related "personality configuration," the plaintiff was *not* entitled to continuing benefits. *Id*. at 594. Thus, the plaintiff's work-related schizophrenia, caused by "the pressure of his job and the pressure of his foreman," *id.*, was a distinct injury from the preexisting personality disorder. The first case citing *Carter* for the principle that mere symptoms were sufficient to constitute a personal injury was promptly reversed by this Court. *Fox v Detroit Plastic Molding Corporate Service*, 106 Mich App 749; 308 NW2d 633 (1981); rev'd 417 Mich 901 (1983).

Holding that the aggravation of symptoms of a preexisting condition is compensable without finding a work-related injury under § 301(1) is clearly inconsistent with the clear language of the statute as well as case law from this Court. The statute requires proof that an employee suffered a personal injury "arising out of and in the course of employment" in order to establish entitlement to benefits. To the degree that the Court of Appeals decisions in *Johnson v DePree Co*, 134 Mich App 709; 352 NW2d 303 (1984); *Thomas v Chrysler Corp*, 164 Mich App 549; 418 NW2d 96 (1987); *McDonald v Meijer, Inc*, 188 Mich App 210; 469 NW2d 27 (1991); *Anderson v Chrysler*

*Corp,* 189 Mich App 325; 471 NW2d 623 (1991); *Siders v Gilco, Inc*, 189 Mich App 670; 473 NW2d 802 (1991); *Laury v Gen Motors Corp (On Remand, On Rehearing)*, 207 Mich App 249; 523 NW2d 633 (1994); *Mattison v Pontiac Osteopathic Hosp*, 242 Mich App 664; 620 NW2d 313 (2000), hold otherwise, they are overruled.

D

We reaffirm today that an employee must establish the existence of a work-related injury by a preponderance of the evidence in order to establish entitlement to benefits under § 301(1).[8] A symptom such as pain is *evidence* of injury, but does not, standing alone, conclusively establish the statutorily required causal connection to the workplace. In other words, evidence of a symptom is insufficient to establish a personal injury "arising out of and in the course of employment."[9]

The text of the statute does not specifically demand that a claimant prove that his injury is "medically distinguishable" from a preexisting condition. However, the clear language of the statute *does* require the establishment of "a personal injury arising out of and in the course of

---

[8] "Injury" is defined as "harm or damage done or sustained, especially bodily harm . . . ." *Random House Webster's College Dictionary* (2001).

[9] "Symptom" is defined as "a sign or indication of something." *Random House Webster's College Dictionary* (2001).

employment." Where a claimant experiences symptoms that are consistent with the progression of a preexisting condition, the burden rests on the claimant to differentiate between the preexisting condition, which is *not* compensable, and the work-related injury, which *is* compensable.[10] Where evidence of a medically distinguishable injury is offered, the differentiation is easily made and causation is established. However, where the symptoms complained of are *equally* attributable to the progression of a preexisting condition or a work-related injury, a plaintiff will fail to meet his burden of proving by a preponderance of the evidence that the injury arose "out of and in the course of employment"; stated otherwise, plaintiff will have failed to establish causation. Therefore, as a practical consideration, a claimant must prove that the injury claimed is distinct from the preexisting condition in order to establish "a personal injury arising out of and in the course of employment" under § 301(1).

### III. RESPONSE TO THE DISSENTS

Justice WEAVER maintains that compensation is available "where the plaintiff's disability is the result of symptoms that occur at work." *Post* at 2 n 3. Justice KELLY would

---

[10] An employee bears the burden of proving the relationship between the injury and the workplace by a preponderance of the evidence. *Aquilina v Gen Motors Corp*, 403 Mich 206, 211; 267 NW2d 923 (1978).

apparently agree.

Such a view is remarkable, representing a radical departure from the text of the statute, as well as the basic proposition, consistent throughout the history of the WDCA, that a claimant must establish a *work-related* injury as a necessary precondition to obtain benefits.[11]  Under the

---

[11]Justice KELLY accurately quotes the holding of the *McKissack* Court, which relied on the holding in *Kostamo*—that "worker's compensation benefits may not be awarded simply because a worker is unable by reason of pain to continue with the work if the cause of the pain is illness or disease not caused or aggravated by the work or working conditions." *Post* at 2 n 1.

However, we disagree with Justice KELLY's conclusion that the *McKissack* quotation does not differentiate between a symptom and an injury.  As the language in *McKissack* indicates, there is a distinction between "pain," which is a symptom, and the "cause of the pain," which is an injury, "illness or disease."

In *McKissack*, a work-related injury was found by the WCAB. 447 Mich 60, 62.  In this case, the irrefutable truth is that neither dissenting opinion is able point to any holding that the "cause of [plaintiff's] pain" was "illness or disease . . . caused or aggravated by the work or working conditions." In fact, the magistrate specifically held that the workplace did *not* cause or aggravate the preexisting injury.  *Post* at 2. Rather, plaintiff's disability was premised on aggravated symptoms, without a finding of a work-related injury.

Justice KELLY would apparently excuse plaintiff from having to establish a work-related injury because "[s]imilar to the tip of an iceberg," pain is frequently "the only symptom showing that an injury was sustained," while the etiology of the pain "remains submerged." *Post* at 3.

The clear language of the statute requires that a claimant prove the existence of an injury "arising out of and in the course of employment." Simply put, a claimant must prove the *presence* of an injury as well as its *cause* to

13

dissents' analyses, a claimant would not be required to establish the existence of a work-related injury. Rather, a symptom of a condition that does not arise out of and in the course of employment, but that fortuitously manifests itself during the work day, would be compensable. However, no matter how diligently the dissents attempt to parse the statute, the statute *clearly* requires the establishment of a work-related *injury*, not a symptom that simply occurs in the workplace. MCL 418.301(1).

The dissents justify this unusual conclusion with little more than invocation of the doctrine that WDCA matters are to be construed liberally because the statute is remedial in nature. Whatever the efficacy of this rule of construction, its application is logically justifiable only where the employer's responsibility is established: where the employee proves the injury is work-related.[12]  We believe it is

_____

establish a compensable claim. It is the responsibility of the Legislature, not this Court, to alter the language of the statute and relieve a plaintiff's evidentiary burden in those cases where the pathological basis of the symptom is difficult to ascertain.

[12] Once an employee has established the existence of an injury that arises out of and in the course of employment, the "liberal construction" standard could arguably be applicable in determining, for example, the extent of the employee's injuries or his ability to return to work after rehabilitation.  Yet we note that the Legislature has instructed that the "liberal construction" standard be utilized on only one occasion in the *entire* WDCA.  See MCL 418.354(17).  Further, conventional rules of statutory

14

inappropriate to utilize the "liberal construction" standard when the issue being considered is the *initial* qualifying matter ~~of~~ whether the claimed injury falls within the WDCA regime. That decision, nearly jurisdictional in nature, is not to be tilted for or against either party as it is made solely for the purpose of determining whether the worker's compensation system will entertain the claim. Accordingly, we conclude that this approach to interpretation of the statute is inapplicable, and the resulting construction flawed.

### IV. CONCLUSION

In this case, we hold that a claimant attempting to establish a compensable work-related injury must adduce evidence of the injury that is medically distinguishable from the preexisting nonwork-related condition in order establish the existence of a "personal injury" by a preponderance of the evidence under § 301(1). We remand this case to the WCAC for further proceedings consistent with this opinion.

Robert P. Young, Jr.
Maura D. Corrigan
Clifford W. Taylor
Stephen J. Markman

---

construction are employed to resolve ambiguities, not negate the import of clear statutory requirements. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459; 663 NW2d 447 (2003). The dissents identify no ambiguity at issue in this case. In any event, we do not address this question, as it is not before us in this case.

15

# STATE OF MICHIGAN

## SUPREME COURT

E. WAYNE RAKESTRAW,

    Plaintiff-Appellee,

v                                No. 120996

GENERAL DYNAMICS LAND SYSTEMS, INC.

    Defendant-Appellant.

_____

WEAVER, J. *(dissenting)*.

I respectfully dissent from the majority's holding that a claimant who alleges that he has suffered a work-related injury because of the aggravation of his symptoms "must prove that the injury is *medically distinguishable* from a preexisting nonwork-related condition . . . ." *Ante* at 1 (emphasis added). The majority's holding reads into the statute a new test that the text of the statute does not require.[1]

The question whether an aggravation of symptoms constitutes a work-related injury is a difficult determination. The Worker's Disability Compensation Act

---

[1] MCL 418.301 requires "a personal injury arising out of and in the course of employment . . . ."

(WDCA) is a remedial statute that should be construed liberally to grant benefits rather than deny benefits. *Bower v Whitehall Leather Co,* 412 Mich 172, 191; 312 NW2d 640 (1981); *DiBenedetto v West Shore Hosp,* 461 Mich 394, 402; 605 NW2d 300 (2000).[2] Therefore, construing the statute liberally, as our case law directs us to do, I would hold that an aggravation of symptoms may constitute a work-related injury that is compensable under the WDCA. In so concluding, I find persuasive the well-reasoned analysis of *Mattison v Pontiac Osteopathic Hosp*, 242 Mich App 664, 672; 620 NW2d 313 (2000), which the majority overrules.[3] *Mattison,* at 672, stated:

> Awarding benefits on the basis of the aggravation of symptoms alone accords with policy underlying the [Worker's Disability Compensation Act]. The objective of the WDCA is to compensate a claimant for the loss of an earning capacity caused by a work-related injury. *Kuty v DAIIE,* 140 Mich App 310, 313; 364 NW2d 315 (1985). Even when a preexisting *condition* was not caused or aggravated by employment, if an employee is unable to work

---

[2] I note that Justice Markman's majority opinion in *DiBenedetto* was joined by all the justices who comprise the majority in this case. If the majority now disagrees with this analysis, perhaps it should act to overrule *DiBenedetto* and all the cases that have so held.

[3] Although at one time on the Court of Appeals I was inclined to hold that there is no compensation where the plaintiff's disability is the result of symptoms that occur at work, (see *Laury v Gen Motors Corp [On Remand, On Rehearing],* 207 Mich App 249, 251; 523 NW2d 633 [1994]), upon further consideration of this issue, I have decided that I agree with *Mattison.*

2

because work-related events have aggravated the *symptoms* of the condition to the point of disability, the employer should be liable for wage-loss benefits until the symptoms subside to their preexisting level. See *McDonald* [ *v Meijer,* 188 Mich App 210, 215-216; 469 NW2d 27 (1991).] But for the employee's work for the employer, the employee would not be disabled. It is therefore appropriate to hold the employer liable for payment of benefits during what is usually a limited period. On the other hand, because the employment did not cause or aggravate the underlying condition, the employer should not be liable indefinitely, but only until the symptoms return to their preaggravated condition. *Id.*

In the present case, the magistrate specifically found that plaintiff's cervical symptoms were aggravated by his work activities and that he was disabled as a result of those symptoms.[4] The magistrate's decision stated in pertinent part, "The Plaintiff has established, by a preponderance of the proofs, that he suffered a *symptomatic aggravation* of his cervical spondylosis and postsurgical cervical changes." (Emphasis added.) The magistrate also stated:

I find Mr. Rakestraw's already altered cervical spine, the postsurgical changes, as well as his cervical spondylosis, were *symptomatically made worse by his work activities.* More specifically, I find that his work activities, through his last day of work, *significantly*

---

[4] Unable to dispute the magistrate's findings, the majority instead attempts to mischaracterize these findings as mere "commentary regarding plaintiff's symptoms." *Ante* at 3 n 3. One should not be persuaded by this obfuscation, which improperly diminishes the role of the magistrate in worker's compensation cases. In considering the case, the WCAC correctly recognized that these statements are appropriately considered as findings of the magistrate.

*contributed to, accelerated or aggravated his cervical symptoms.* That *aggravation of his symptoms* has not abated. He remains disabled as a result of those symptoms. [Emphasis added.[5]]

Applying the reasoning of *Mattison,* the aggravation of the plaintiff's symptoms in this case is an injury arising out of and in the course of employment, and, thus, plaintiff is entitled to worker's compensation benefits for the aggravation of his symptoms until such time as his symptoms return to their preaggravated condition.

The majority asserts that this analysis disregards the requirement of a work-related injury and permits a claimant to recover for a "symptom that simply occurs in the workplace." *Ante* at 14. Such an assertion is unfounded. As I have emphasized, the magistrate found that the plaintiff's symptoms in this case were aggravated by work. Thus, they cannot properly be considered symptoms that fortuitously manifested

_____

[5] In its decision affirming the magistrate's award, the WCAC noted that defendant did not challenge the basic factual findings of the magistrate.

Pursuant to MCL 418.861a(3), "[t]he WCAC treats the magistrate's findings of fact as conclusive 'if supported by competent, material, and substantial evidence on the whole record.'" *Mudel v Great Atlantic & Pacific Tea Co,* 462 Mich 691, Appendix 732; 614 NW2d 607 (2000).

The reviewing court treats the findings of fact made by the WCAC as conclusive in the absence of fraud. *Id.* "If there is *any* evidence supporting the WCAC's factual findings, the [reviewing court] must treat those findings as conclusive." *Id.* Questions of law are reviewed de novo. *Id.*

4

themselves during the workday; instead, they are causally linked to plaintiff's work.

For these reasons, I would remand this case to the magistrate for proceedings consistent with this reasoning.

Elizabeth A. Weaver
Michael F. Cavanagh
Marilyn Kelly

5

E. WAYNE RAKESTRAW,

    Plaintiff-Appellee,

v                                    No. 120996

GENERAL DYNAMICS LAND SYSTEMS, Inc.,

    Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

I join Justice Weaver in her dissent and write separately to comment on several aspects of the majority opinion.

  I.  THE MAJORITY'S UNSUPPORTED EXTENSION OF PAST CASE LAW

The majority concludes:

> On several occasions, this Court has held that symptoms such as pain, standing alone, do not establish a personal injury under the statute. Rather, a claimant must also establish that the symptom complained of is causally linked to an injury that arises "out of and in the course of employment" in order to be compensable.[4]

_____

[4]See *Kostamo v Marquette Iron Mining Co*, 405 Mich 105, 116-118; 274 NW2d 411 (1979); *Miklik v Michigan Special Machine Co*, 415 Mich 364; 329 NW2d 713 (1982); *Farrington v Total Petroleum, Inc*, 442

> Mich 201; 501 NW2d 76 (1993); *McKissack v Comprehensive Health Services of Detroit*, 447 Mich 57; 523 NW2d 444 (1994). See also *Hagopian v Highland Park*, 313 Mich 608, 621; 22 NW2d 116 (1946) ("The amended act itself was not intended to cover aggravation of pre-existing disease without an accident or fortuitous event."). [*Ante* at 5-6.]

The cases cited for this proposition conclude that an injury must be causally related to employment. Their focus is on the causal connection between the pain and the preexisting condition, not on whether pain alone could constitute an injury absent a preexisting condition.[1] None of them explicitly holds that pain alone is insufficient to establish an injury. Today, in its pronouncements on pain, the majority

---

[1]For instance, the *McKissack* Court held:

> Clearly there is a difference between pain resulting from "illness or disease *not caused or aggravated*" by the work or working conditions, and pain *resulting* from a work-related injury. As indicated in *Kostamo*, worker's compensation benefits may not be awarded simply because a worker is unable by reason of pain to continue with the work if the cause of the pain is illness or disease not caused or aggravated by the work or working conditions. But contrariwise, if the WCAB finds that pain is caused or aggravated by a work-related injury, and the worker cannot by reason of pain resulting from the injury continue to work, the WCAB can find that the worker is disabled and award benefits. [*McKissack, supra* at 67 (emphasis in original).]

Thus, the Court focused on causation, not on the difference between symptoms and injuries. Nowhere does the Court state that pain alone cannot establish a personal injury; instead, it concludes that pain *not caused by a work-related injury* is not compensable.

makes new law.  It does not simply return the law to a prior state.

When a physician evaluates a patient's condition, frequently the only symptom showing that an injury was sustained is a complaint of pain.  Similar to the tip of an iceberg, pain is the sole part exposed to view, while the greatest part by far remains submerged.  Using even the best medical technology, that part may not be "medically distinguishable from a preexisting condition."  By discounting pain and redefining  "injury," the majority importantly alters the previous definition of the word "injury" under the act and eliminates many compensation-worthy claims.

Moreover, when carried to its logical conclusion, the majority's definition of "personal injury" may adversely affect employers, as well as employees, stripping employers of some of the protections of the Worker's Disability Compensation Act.  This is because the act makes the recovery of benefits the employee's exclusive remedy against an employer for a personal injury.[2]  No "injury" means no WDCA exclusivity.  If an employee suffers harm at work, but is not "injured" as the majority defines the word under the act, the WDCA would cease to be the employee's exclusive remedy.  MCL

_____

[2]The act also uses the term "personal injury" at MCL 418.301.

3

418.131.  Hence, the employee could bring a tort action against the employer for money damages.  The employer would be subjected to the expense and uncertainty of litigation, one of the very eventualities that the WDCA was enacted to prevent.

Thus, the majority alters the long-established approach to determining a compensable work-related injury.  This alteration is relevant to the very foundation of the Legislature's intent in enacting the WDCA and risks upsetting it.

## II.  LIBERAL CONSTRUCTION OF THE WDCA

It is also important to note the danger of the majority's questioning and partial disavowal of the rule that the Worker's Disability Compensation Act "should be construed liberally to grant rather than deny benefits."  The pronouncement jeopardizes decisions that invoke the rule going back over seventy years.[3]

---

[3]See, e.g., *Hagerman v Gencorp Automotive*, 457 Mich 720, 739; 579 NW2d 347 (1998); *Derr v Murphy Motor Freight Lines*, 452 Mich 375, 388; 550 NW2d 759 (1996); *Sobotka v Chrysler Corp (After Remand)*, 447 Mich 1, 20 n 18; 523 NW2d 454 (1994); (opinion by Boyle, J.) *Paschke v Retool Industries*, 445 Mich 502, 511; 519 NW2d 441 (1994); *Bower v Whitehall Leather Co*, 412 Mich 172, 191; 312 NW2d 640 (1981); *Century Indemnity Co v Schmick*, 351 Mich 622, 626; 88 NW2d 622 (1958); *Lindsey v Loebel*, 265 Mich 242, 245; 251 NW 338 (1933)(Weadock, J., concurring); *McCaul v Modern Tile & Carpet, Inc*, 248 Mich App 610, 619; 640 NW2d 589 (2001); *James v Commercial Carriers, Inc*, 230 Mich App 533, 539; 583 NW2d 913 (1998); *Tulppo v Ontonagon Co*, 207 Mich App 278, 283; 523 NW2d 883 (1994); *Isom v Limitorque Corp*, 193 Mich App 518, 522-523; 484 NW2d 716 (continued...)

Michigan courts have always considered the WDCA and its predecessors to be "remedial in nature." *Hagerman v Gencorp Automotive*, 457 Mich 720, 739; 579 NW2d 347 (1998). Ballentine's Law Dictionary defines a remedial statute as "[a] statute to be construed liberally as one intended to reform or extend existing rights . . . ." Ballentine's Law Dictionary (3d ed). Accord 73 Am Jur 2d, Statutes, § 8, pp 234-235.

Initially, I note that the majority misconstrues the dissents. It states that we would use liberal construction of the WDCA to award compensation for injuries that do not arise out of and in the course of employment. *Ante* at 15. This is incorrect. The liberal construction rule simply means that if an injury arises out of and in the course of employment, courts should favor inclusion. The rule guards against the rigid exclusion of claims that could go either way, and does not provide for inclusion of claims to which the WDCA is wholly inapplicable.

A. THE LIBERAL CONSTRUCTION RULE APPLIES TO WHETHER AN

INJURY IS WORK-RELATED

Next, I disagree with the majority that liberal

³(...continued)
(1992); *Andriacchi v Cleveland Cliffs Iron Co*, 174 Mich App 600, 606; 436 NW2d 707 (1989); *Gross v Great Atlantic & Pacific Tea Co*, 87 Mich App 448, 450; 274 NW2d 817 (1978); *Welch v Westran Corp*, 45 Mich App 1, 5; 205 NW2d 828 (1973), aff'd 395 Mich 169; 235 NW2d 545 (1975).

construction should be applicable only at a secondary stage of the analysis. I believe that it is applicable also at the "initial qualifying" stage when a determination is made whether a claim is covered by the WDCA.

The majority asserts that the "work-related" question is resolved at the initial stage, which it terms "nearly jurisdictional." However, no mention of "work-related" appears in MCL 418.131, the "nearly jurisdictional" provision.

MCL 418.131 delineates the ambit of the WDCA and provides that "[t]he right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease." Therefore, jurisdiction is based on "personal injury" or "occupational disease," not on whether an injury or disease is "work-related."[4]

Whether an injury is work-related is resolved after the

[4]Obviously, the personal injury must have some relation to employment for the WDCA to apply. However, the majority's "threshold" question, whether the injury is "medically distinguishable" for purposes of determining whether it is "an injury arising out of and in the course of employment," is not implicated at the jurisdictional stage of the proceedings. If the majority were to define "work-related" in a broad sense, I might conclude that MCL 418.131 and MCL 418.301 were coextensive. It is the majority's narrow construction of § 301 that leads me to rely on the differences in the two provisions. The point, and, implicitly, the basis of my entire disagreement with the majority, is that "work-related" can, and should, be construed to include more than the majority would allow.

6

jurisdictional stage, when the analysis has proceeded to the point of determining whether the employee is entitled to benefits. MCL 418.301 then becomes relevant. It provides that "[a]n employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act." Hence, the question whether an injury is "work-related" is not a "jurisdictional" question, but one directed at whether the injured employee is entitled to benefits from the employer in question.

It is beyond dispute that our courts have consistently used the liberal construction rule to decide the question of entitlement to benefits. As the *Bower* Court stated:

> The Worker's Disability Compensation Act was designed to help relieve the social and economic difficulties faced by injured workers. As remedial legislation, it is liberally construed *to grant rather than deny benefits. Niekro v The Brick Tavern*, 66 Mich App 53; 238 NW2d 537 (1975). See *McAvoy v H B Sherman Co*, 401 Mich 419; 258 NW2d 414 (1977). [*Bower v Whitehall Leather Co*, 412 Mich 172, 191; 312 NW2d 640 (1981)(emphasis added).]

Because the question whether an injury or disease is "work-related" is directly implicated in determining entitlement to benefits, it follows that the question is susceptible to liberal construction.[5]

---

[5]The majority is unable to refer us to authority for the proposition that the liberal construction rule should not be
(continued...)

7

## B. APPLICATION OF THE RULE TO THE QUESTION OF WORK RELATION

## IS LOGICALLY JUSTIFIABLE

The majority concludes that liberal construction is "logically justifiable" only after it has first been established that an injury is work-related. My disagreement with the conclusion is based in part on the fact that the application of liberal construction to whether an injury is work-related comports with the Legislature's remedial goals.

Our courts have been relying on the liberal construction principle since at least 1933.[6] In 1994, Justice Brickley provided an example of its proper application in his lead opinion in *Nederhood v Cadillac Malleable Iron Co*, 445 Mich 234, 247; 518 NW2d 390 (1994):

> In formulating our decision . . ., we must also be mindful of the policies underlying the Worker's Disability Compensation Act. MCL 418.101 *et seq.*; . . . As a preliminary matter, it must be remembered that the act was designed to be remedial and must not be unnecessarily construed so as to favor a denial of benefits. . . .
>
> * * *
>
> It would seem that a permanent forfeiture of benefits is not in accord with a liberal construction of the Worker's Disability Compensation Act.

---

[5](...continued)
applied to determine whether an injury is "work-related." Its conclusion is based on its own analysis, not on precedent.

[6]*Lindsey v Loebel, supra.*

8

The majority seems to indicate that it is improper for the Court to consider legislatively derived public policy in making its decisions. The inference is that Michigan courts have been handing down improper decisions in this regard for decades. I believe that is manifestly incorrect. Over the years, we have consistently used policy-driven principles for the purpose of interpreting the WDCA in line with the Legislature's intent. The liberal interpretation rule is foremost among them.[7] This principle being so firmly established, I see no reason to abandon it.

I also disagree with the majority's contention that utilizing the liberal construction rule to determine "whether the claimed injury falls within the WDCA regime" somehow "tilt[s]" the scales in favor of the employee. *Ante* at 15. Construing the statute to find that claims are within its ambit should be in the interest of employers as well as

---

[7]Nor do I find the fact that the Legislature has referenced liberal construction only once in the WDCA should discourage its use. The text of a statute often does not indicate what construction is appropriate to it. For example, the text of the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, does not require a "narrow" interpretation of its exceptions. Courts have determined that they are construed narrowly. The majority has shown no difficulty accepting this judicially constructed principle. The "narrow construction" of the GTLA's exceptions resulted from judicial examination of the intent surrounding the act. A similar analysis was employed to find that the liberal construction rule should be applied to the WDCA. *Reardon v Dep't of Mental Health*, 430 Mich 398, 406-413; 424 NW2d 248 (1988).

employees; it prevents costly tort actions and provides methods of encouraging employees who recover from injuries to seek suitable employment. The majority treats the WDCA as a boon to employees and a scourge to employers, but that is not and never was intended to be the case.

Moreover, the majority implies that use of the liberal construction rule would open the floodgates to increased employer liability. However, the implication disregards the fact that liberal construction of the WDCA, and not the approach it announced today, is the established law. I do not advocate a change in the law. On the contrary, I seek to maintain the approach to interpretation of the WDCA that has existed for the past seventy years. If the liberal construction rule opens the floodgates, then they were opened a very long time ago.

### III. CONCLUSION

In my judgment, this decision implicates much more than the majority is willing to admit. It will be viewed by many in the area of worker's compensation law as a crippling blow to the liberal construction rule. It will be cited for the proposition that the rule cannot be applied in deciding whether an alleged injury was work-related or even whether it constitutes an injury at all.

No matter how the majority spins it, this decision shakes

the foundations of established worker's compensation jurisprudence. Past case law does not establish that pain alone is never sufficient to prove a personal injury, but the majority so holds today. Michigan courts have historically applied the liberal construction rule to the question whether an injury is work-related, but today the majority holds this illogical. All these conclusions are drawn not from precedent and not from the WDCA itself. They come unmistakably from this majority's conclusion that it knows better than the jurists who have decided these cases for the last seventy years.

The majority's decision represents a serious departure from established law and a disavowal of established public policy. These changes are seriously ill-conceived. I would affirm the decisions of the Court of Appeals, the WCAC, and the magistrate.

Marilyn Kelly